ARMSTRONG v. THE CITY OF ST. LOUIS, *Appellant.*

69 309
33a 606
69 309
101 182
69 309
43a 221
69 309
54a 512

1. **Res Adjudicata**: PAROL EVIDENCE. When the record of a former suit shows that the matter in controversy in the pending case was determined in that suit, parol evidence on the same subject is inadmissible. If offered for the purpose of showing that some other matter was also determined, it is immaterial. If offered for the purpose of showing that the same matter was not in point of fact determined, it contradicts the record. In either event it should be rejected.

2. **Ejectment to recover a Street-way.** The owner of land wrongfully taken by a city and converted into and used as a public street, may maintain ejectment against the city for its recovery.

3. **Rental value**: EVIDENCE. Experts called to testify to the rental value of real estate, swore that the rental value was six per cent. of its sale value, which they fixed at $35 per front foot. *Held*, that there was no objection to receiving the evidence. It might be more involved than if the result had been computed and stated by the witnesses, but was not inadmissible.

4. **Damages in Ejectment**: BENEFITS FROM STREET. OPENING. In ejectment to recover land wrongfully appropriated by a city for a street, the jury have no right to consider the benefits accrued to the plaintiff by reason of the making of the street, in reduction of damages.

*Appeal from St. Louis Court of Appeals.*

*Leverett Bell* for appellant.

*Addison Reese* and *Frank Hicks* for respondent.

HENRY, J.—The plaintiff sued the defendant, city of St. Louis, in ejectment, for two parcels of land lying in said city, laying his damages at $15,000 and stating the monthly rents and profits to be $83.93.

The answer was a denial, and a plea of the statute of limitations, and also, as a defense, that plaintiff had dedicated the premises to the city, to be used as a street, and that the city had proceeded, after said dedication, to improve said parcels of land to be used as a street, and that, for ten years next before the commencement of this suit, said premises had, with plaintiff's consent, been used as a street.

Plaintiff, as to his title and the alleged dedication, pleaded, in his replication, that those questions between plaintiff and defendant were *res adjudicata*, having been settled and determined in a cause between plaintiff and defendant, commenced in the circuit court of St. Louis county, December 10th, 1868, in which plaintiff alleged title in himself to the said premises, and defendant, for a defense, relied upon a dedication of the same by the plaintiff to public use. In that suit, the record of which was introduced as evidence by plaintiff, he obtained judgment.

It clearly appeared that the same premises were in dispute in both cases, and the dedication relied on in this
1. RES ADJUDICATA: was the identical dedication relied upon by parol evidence. the city in that case. Where the record shows what questions were necessarily involved in a suit which has been determined, parol evidence is inadmissible to show that those questions were not, and others were, determined. Parol evidence has been held admissible to prove what was determined where the record itself failed to do so. The court properly admitted the record of the former suit, and excluded the parol testimony offered to show what matters were adjudicated in that suit. If the parol evidence would have shown that other questions were also considered and determined in that action, it would have been immaterial in this. If it would have shown that the question of the dedication of the premises by Armstrong to the city was not considered and determined in

that suit, it would have contradicted that record; and, in either view, the parol evidence was inadmissible.

The principal question in this case is, whether an action of ejectment will lie against a city, by the owner of land wrongfully taken by the city and converted into and 2. EJECTMENT TO used as a public street. There are authori-
RECOVER A STREET
WAY. ties which hold that the action cannot be maintained, but the reasons given for it are unsatisfactory.

In *Cowenhoven v. City of Brooklyn*, 38 Barb. 9, the court say: " The claim of the corporation, if any, was to a public right of way over the land, not incompatible with the title of the plaintiff, for it was a mere easement, nor with his possession, for if he owned the fee of the land over which the street passes, he would, in contemplation of law, be in possession of the street, and might maintain trespass against another for any use of the land except for the purpose of traveling." The owner of the land in such case is as entirely deprived of the use of the land as if the city had taken it and claimed to be the owner in fee simple. To say that he is in " contemplation of law in possession of the street," is no answer to the real fact that he is entirely deprived of the possession. He has the same right to travel over the street as any other person, not, however, as owner of the property, but as one of the public, any one of whom can exercise as much dominion over the property as he. He is entirely deprived of his property. He cannot sue the public, or any one traveling on the street, and recover his property; and if he cannot sue the corporation, which has taken and holds possession of the premises as a street, and recover the specific property, then private property may be taken and held for public use, without a compliance with the law providing a mode of condemnation. He may sue and recover its value from the city, and has no other remedy, it is contended; but this would be to hold his property at the mercy of the city, which can take it from him, and compel him to accept, in lieu of the property, the amount of money a jury may es-

timate it to be worth, or rather, a judgment for that amount, which may possibly never be satisfied, and thus force him to exchange his land, which he may wish to hold, for money, or other property, which he does not want. He has a right to the specific property, and no corporation, not even the State, can deprive him of it but in the manner provided by law.

The cases cited from Massachusetts and New Hampshire are not applicable. *Smith v. Wiggin*, 48 N. H. 105, was a writ of entry, in which demandant sought to recover "a right of way, or a passage from Chappel street, at any and all times with teams," &c., and it was held that, "ejectment would not lie against one claiming an easement in a parcel of land, to try his right to enjoy the same." If Armstrong were refused the privilege of traveling over the street, and should sue in ejectment to try his right to do so, the case would be in point. What was decided in that case is undoubted law. Armstrong, however, is not suing to recover, or to try his right to, an easement in the premises in controversy, but to recover the premises, and oust the city, which, whether it claims in the land an easement only, or not, has entirely deprived him of the possession thereof. In the case of *Child v. Chappell*, 9 N. Y. 248, the defendant was not in the exclusive possession of, nor did he claim any such right, to the wharf. His use of the wharf and basin was only temporary and occasional, and not exclusive; and the court therefore held that ejectment could not be maintained.

The writ of entry, as a remedy for the recovery of real property, is retained in New Hampshire and Massachusetts, and will not lie unless both demandant and tenant claim a freehold in the premises. In *Mills v. Peirce*, 2 N. H. 9, which was a writ of entry for "a certain store situated in Dierfield" Woodbury, J., said: "If, in fact, at the commencement of the action, the tenant was not in possession claiming any interest he should have pleaded *non tenure*, or disclaimed; or, if in possession, claiming

less than a freehold, he should have pleaded *non tenure special.*" In *Smith r. Wiggin,* 48 N. H. 105, Nesmith, J., said: "The demandant in a writ of entry must demand a freehold. It follows that the tenant against whom the action is brought must be seized of a freehold." In *Higbee v. Rice,* 5 Mass. 344, Parsons, C. J., said: "And it will not be denied, that in *ejectione firmae,* which is an action of trespass against the defendant for ejecting the plaintiff from his farm, under the general issue of not guilty, if the parties were tenants in common, the plaintiff, to recover, must prove an ouster by the defendant. We speak not of the fictitious, but of the actual *ejectione firmae,* in which neither the lease, entry nor ouster is confessed. And the reason is evident, because the ouster is not only charged in the writ, but is by the plea put in issue. But a writ of entry will lie only against a tenant of the freehold, and, if he does not disclaim or plead *non tenure,* he admits himself to be the tenant of the freehold by the plead of *nul disseizin.*" All the cases cited from those States were writs of entry, and it is clear why a writ of entry will not lie there against a city, or town, for land wrongfully taken by it for a street, in which it claims only an easement. This peculiarity of the writ of entry may explain the decisions in New Hampshire and Massachusetts cited by appellant's counsel. The distinction, in this respect, betwixt that form of action and ejectment is recognized by Judge Parsons in the above extract from his opinion in *Higbee v. Rice.*

The action of ejectment, in its origin, was a mere action of trespass, but ultimately, by a series of fictions, superseded other remedies for the recovery of real property. It is not necessary that the defendant should own, or claim, a freehold estate in the premises or any estate whatever, but it is sufficient that he has ousted the owner. Here the city ousted Armstrong, took his property, converted it into a street, holds possession of it as such, and permits the public to use it for that purpose, excluding Armstrong from any use of the street except in common

with the public. In *Crandell'v. Taunton*, 110 Mass. 419, the evidence of the superintendent of streets for the city of Taunton was, that he had general care of the streets, and acted under the direction of the mayor and aldermen, and of the city council; that he was ordered to lower the grade of Weir street; " that he lowered the grade, and in doing so, dug down and carried away the soil from the demanded premises, and, also, carried away certain curbing stones thereon placed, and deposited them with other property of the city; and that he caused the demanded premises to be lowered to the grade of the street, and made a sidewalk, a part of which the demanded premises were; that he did these acts under orders to widen, grade and straighten Weir street, and supposed the demanded premises were a part of the public street; that he thus acted as an officer of the city, and, as he supposed, as a part of his duty as superintendent of streets; and that the street had continued as when he left it." The court held that these acts did not show an ouster on the part of the city. Whatever may be held in other cases, this is no authority for the position of the city here. The officer acted upon the supposition that the land he trespassed upon was a part of the street. He was only authorized to lower the grade of the street, and no authority to interfere with the premises in question was given him by the city, nor did the city in any manner ratify his act. Defendant, it is true, by plea disclaimed all right in the land, except a public easement in it as a highway, but simply claiming it as a public highway would not amount to an ouster, or a ratification of an unauthorized entry upon the land by an officer of the city

However this question may have been ruled elsewhere, the reasons assigned for the doctrine in those cases are so unsatisfactory, that we prefer following the intimations of our own court to the contrary, rather than those express adjudications. *Anderson v. The City of St. Louis*, 47 Mo. 484, was a proceeding by injunction to restrain the city

from taking possession of land for use as a public wharf, plaintiff claiming that the condemnation was illegal. The court said: "If possession were taken of the property by the city, ejectment would lie." *Hammerslough v. The City of Kansas*, 57 Mo. 221, was a suit to enjoin the city from using plaintiff's lot as a street, and the court said: "The remedy of the plaintiffs, if they claim that the sale to the city was void, was an action of ejectment." In *Walker v. Chicago R. R. Co.*, 57 Mo. 275, this court held, where a railroad company entered upon land of plaintiff and constructed its road upon it, not having proceeded in a lawful manner to obtain a right of way, that it might be ousted by ejectment. The same doctrine, we think, is recognized in *Evans v. The M. I. & N. R. R. Co.*, 64 Mo. 453, and *Walther v. Warner*, 25 Mo. 277. All that the railroad company in *Walker v. Chicago R. R. Co.* acquired was a right of way, and it claimed no more. The fee simple title remains in the owner after a legal condemnation of the land for a right of way. The railroad company can acquire only an easement in the land taken for a road-bed, and no reason is perceived why, if ejectment can be maintained against a railroad company to recover such land, illegally taken by the company, it will not lie against a town or city for land unlawfully taken by it for a street. The right to maintain an ejectment against a party in possession does not depend upon the right he claims in the premises, but upon the wrong he has done the claimant, if the true owner. If he has turned him out of possession and holds the premises against him, it does not matter what interest he claims.

The doctrine of this court on the subject, we think, accords with reason and justice, and the constitutional provision, which forbids the taking of private property for public use without just compensation. It has been uniformly held, that private property cannot be taken for public use, except in strict accordance with the law which prescribes the manner in which it may be acquired for pub-

lic use. Cooley's Const. Lim., 527; Story on the Constitution, § 1956.

The only remaining question is in regard to the damages found by the jury, and the evidence upon which they were allowed. Appellant contends that they were excessive, and that the evidence introduced by plaintiff in relation to damages and rents and profits was incompetent. The verdict and judgment are for $10,943.64, and the value of monthly rents was found by the jury to be $89.15. The latter sum exceeded that stated in the petition as the value of the monthly rents and profits, but this error was cured by a *remittitur* filed by respondent in the office of the clerk of the court of appeals, in accordance with the judgment of that court. The testimony in regard to the rental value of the property was that of real estate agents and dealers, who testified that is was worth six per cent. upon its value, estimated by them at about $35 per front foot. This was objected to by defendant as incompetent evidence. While, perhaps, it was not as specific as it might have been, we cannot say that it was incompetent. If the witnesses had, by a mental process, first ascertained what six per cent. upon the estimated value of the property would produce, and then simply stated the result as the rental value, it certainly would have been competent, explicit and satisfactory; and that they saw proper substantially to make the same answer to the question, although in a form more involved and intricate, is no reason for declaring it inadmissible. The witnesses were intelligent real estate agents, and dealers in real estate, and were testifying in relation to the rental value of the property in dispute, and their testimony was given in a professional manner. Witnesses less familiar with real estate values and less methodical in their mode of estimating values, would, perhaps, have testified more directly, while probably the evidence of real estate agents would have been the more reliable. We cannot say that the evidence did not warrant the verdict, and

*(margin note: 3. RENTAL VALUE: evidence.)*

holding that it was admissible, we cannot reverse the judgment on the ground that the damages were excessive, or that there was no evidence to warrant the jury in assessing the damages at the amount found by them.

It was not for the jury to consider the benefit Armstrong received by widening Chouteau Avenue in reduction

4. DAMAGES IN EJECTMENT: benefits of street opening.

of his damages for taking his property for that purpose. That is a legitimate inquiry in condemnation proceedings, but not in an action of ejectment. Besides, defendant neither proved, nor offered to prove, that Armstrong was benefited at all by the widening of the street. · The judgment is affirmed. All concurring.

AFFIRMED.