SECOND STREET IMPROVEMENT COMPANY, Appellant, v. KANSAS CITY SOUTHERN RAILWAY COMPANY.

Division One, March 3, 1914.

1. **STREET: Vacation: Title.** Upon the vacation of a public alley by the city council, the title to the land and the right to the use thereof revert to the owner of the abutting property of which it is a part.

2. **LANDS: Occupied by Railroad: Ejectment or Damages.** Where an eight-foot strip of land belonging to plaintiff is occupied by a railroad company with its baggage room and tracks and is used for a long time for that purpose after a ten-year lease thereon expired, and plaintiff stood by and saw it so used and the company go to the expense and trouble of condemning the adjoining land, from which proceeding the strip was inadvertently omitted, plaintiff's remedy is not ejectment, but a suit for damages for the wrongful appropriation of the land,

where his substantial rights would not thereby be injured, and the public service would be crippled by ejectment.    Plaintiff's invitation to the company to use the land for railroad purposes, and his silence while it was being put to such use, estops him to recover the land itself, though not to recover its value.

Appeal from Jackson Circuit Court—*Hon J. H. Slover,* Judge.

AFFIRMED.

*C. W. Bailey* and *E. C. Wright* for appellant.

(1)    The legal title to the strip of land sued for vested in the plaintiff on March 29, 1891.    (2)    The alley vacated was a strip of land 16 feet wide east and west and 140 feet long north and south, of which the land sued for in this case is the west one-half.    (3) The lease of Lots Nos. 112 and 113, Old Town "*eo nomine*" from the Second Street Improvement to the Kansas City Suburban Belt Railroad included on the principle of accretion that part of the vacated alley sued for in this case.    Railroad v. Patch, 28 Kan. 470; Snoddy v. Bolen, 122 Mo. 479; Paine v. Storage Co., 71 Fed. 626.    (4)    The grantor deeds and the grantee takes through a deed according to a plat which calls for a street to the middle of the platted street.    This is not only a rule of construction but one of policy established for the purpose of ascertaining the intention of the grantor, that will not be departed from unless the deed expressly provides to the contrary. Banks v. Ogden, 69 U. S. 57; Thomas v. Hunt, 134 Mo. 392; Gould v. Railroad, 142 Mass. 85; Cox v. Louisville, 48 Ind. 178; Dubuque v. Maloney, 9 Iowa, 450; Paul v. Carver, 24 Pa. St. 207; Perrin v. Railroad, 36 N. Y. 120.    (5)    A tenant cannot claim possession adversely to his lessor, especially when he has gone into possession under a written lease.    Handlan v. McManus, 100 Mo. 124; Crockett v. Althouse, 34 Mo. App. 404; Hamilton v. Boggess, 63 Mo. 233; Budd v.

Collins, 69 Mo. 129; Gordon v. Eans, 97 Mo. 587; Comstock v. Eastwood, 108 Mo. 41.   (6)   Even if the lease did not cover that part of the vacated alley as being a part of the lots on the west and owned by appellant, yet it belonged to plaintiff March 29, 1891, and respondent and its predecessor never claimed it adversely to plaintiff till on or after the jury trial on the exceptions in the condemnation case, which was in December, 1907.   (7)   The appellant never did anything further than the execution of the lease which expired June 1st, 1901, to invite the respondent and its predecessor to build tracks or other improvements upon the eight-foot strip of land sued for in this case, and therefore is not estopped to bring ejectment, and whatever improvements were made, respondent had a right to make under said lease.   Walker v. Railroad, 57 Mo. 275; Childs v. Railroad, 117 Mo. 414; Green v. Railroad, 82 Mo. 653; Bradley v. Railroad, 91 Mo. 500; Dodd v. Railroad, 108 Mo. 585.   (8)   The respondent did not make any improvements on the disputed land after June 1, 1901, and therefore appellant is not estopped to bring ejectment for the land in suit, but had the option to bring ejectment or a suit for damages for appropriation.   Doyle v. Railroad, 113 Mo. 287.   (9) The plaintiff is aware of the fact that there are many and numerous decisions in the State of Missouri to the effect that where a land owner stands by and consents that a railroad may build upon his land, waiving prepayment of damages, he cannot pursue ejectment but is left to his remedy to sue for an appropriation for the value of the land taken and damages to the remainder of which that taken forms a part.   Provolt v. Railroad, 57 Mo. 256; Scarritt v. Railroad, 127 Mo. 298.

*S. W. Moore* and *Cyrus Crane* for respondent.

(1)   The lots adjacent on the west of the eight-foot strip in question, having been purchased by the

plaintiff in the interest of and for the use of the railroad company with an understanding that later on the railroad company would take them off the hands of the improvement company at a profit, it is apparent that the entry of the railroad company upon the strip in question was permissive. The only reason why the railroad company did not acquire this property in the first instance, according to Mr. Martin, was that the railroad company did not have the money, whereas, the improvement company, composed of the same stockholders was equipped with the necessary funds to make the purchase. The railroad company apparently proceeded upon the assumption that it owned the strip and apparently the Second Street Company acquiesced in that claim by making no claim for it until December, 1907, when, in connection with the trial before a common law jury in a condemnation suit affecting the lots to the west of the vacated alley, the plaintiff for the first time suggested that it might have some claim to it. This very fact that the appellant alleged it had "forgotten" it had any claim to the strip and made no claim of the kind for six or seven years after the lease on the adjoining property had expired and the property of the Suburban Belt Railroad Company had been sold to a company which had no affiliation with the Second Street Improvement Company or its stockholders, is strong evidence that the improvement company had never regarded this strip except as right of way for depot grounds which it had obtained and turned over to the railroad company without expense. (2) It has been held in a long line of decisions in this state that a property owner cannot stand silently by and see a railroad company spending money and making improvements upon his land for railroad purposes and thereafter maintain an action in ejectment against the railroad. Gray v. Railroad, 81 Mo. 126; Provolt v. Railroad, 57 Mo. 256; Kanaga v. Railroad, 76 Mo. 207;

Bradley v. Railroad, 91 Mo. 499; Alexander v. Railroad, 138 Mo. 473.

GRAVES, J.—This is an action in ejectment for a strip of ground eight feet wide by 140 feet long in Block 11 of the old town of Kansas City, Missouri. Ouster is laid as of December 1, 1903, damages asked in the sum of $10,000 and monthly rents and profits alleged to be $100 per month. The facts may be thus summarized:

In 1890 the Kansas City Suburban Belt Railroad Company located its depot at Second and Wyandotte streets in Kansas City, Missouri. The Railroad Company did not acquire all the lands necessary for its use for a depot and other terminal facilities, but a portion of the necessary lands were acquired for such use by the Second Street Improvement Company, a friendly corporation, whose officers and directors were largely identical with those of the railroad company. Both corporations had the same president. The lands acquired by the Improvement Company were Lots 112, 113 and 114 of Block 11. These were to the west of lands owned by the railroad and separated therefrom by a sixteen-foot alley. Block number 11 does not set square with the compass, but sufficiently so for us to say that it is bounded on the north by Second street, on the south by Third street and on the east by Wyandotte street. This block contained ten lots numbered respectively from 107 to 116 inclusive, as indicated by the plat in evidence. The alley of 16 feet ran north and south through the block, and lots 112, 113 and 114 were on the west of the alley way, and next to Second street, lot 112 abutting upon Second street, with the other two lots to the south of it. On the east of the alleyway were lots 111 and 110, the former of which abutted in its length upon Second street, and in its width on Wyandotte street. The depot of the Suburban Belt railroad was built upon lots 111 and 110, and

extended across this alley over on the lots acquired by the Improvement Company. ' It is the west eight feet of this alley which is involved in this suit, and such eight-foot strip runs through the baggage room of the depot above mentioned.

Recurring now for further development of the facts. Mr. Martin, the then president of the Improvement Company, in a letter written to the railroad company, thus states the reasons of the purchase:

"All this property (Lots 112, 113 and 114 and other property) was purchased in the interest and for the use of the Suburban Belt Railway, but at that time its financial condition was such as to have the Second Street Improvement Company take the property in its name with the understanding that later on Suburban Belt was to take it off their hands at cost, with four per cent per annum net profits added."

The Improvement Company got its deed to the lots above named April 29, 1890. In June, 1891, the Improvement Company and the Railroad Company entered into a lease, by the term of which the Railroad Company was to have possession of said lots 112, 113 and 114, for a term ending in ten years, or on January 1, 1901. The purpose or use expressed in the lease was for "depot grounds." A rental of $2,566.40 per year was fixed, which was to be paid semiannually. In the lease the Railroad Company was given the option to purchase upon terms in the instrument named. By ordinance approved March 12, 1891, the Common Council of Kansas City vacated this alley in so far as it affected the lots above mentioned.

In 1901 all the property interests of the Kansas City Suburban Belt Railroad were purchased by the Kansas City Southern Railway Company, the respondent in the case at bar. This was at a foreclosure sale in the Federal Court. In March, 1902, the Kansas City Southern Railway Company brought its suit to condemn Lots 112, 113, and 114, supra, but it appears

that this west half of this alleyway was not specifically mentioned. The right or alleged right to this strip seems to have been overlooked for a time. Upon a trial *nisi* the court held that plaintiff should have brought suit for the appropriation of the land, rather than a suit in ejectment for the land itself. It should be added that not only does the defendant's depot cover this strip, but it is crossed by the tracks of the defendant. From this adverse judgment the plaintiff has appealed. Points made, and additional facts, if required, will be noted in the opinion.

I. It will be noted that plaintiff acquired the three lots abutting upon this alley in April, 1890; that the alley was vacated in March, 1891; and, that the lease was made in June, 1891. That upon the vacation of the alley, the use and title thereto, so far as the west half is concerned, reverted to the Improvement Company there can be no doubt. But as to whether this eight-foot strip was covered by the lease afterward executed, or was involved in the condemnation suit afterward brought, we shall not discuss, because in our judgment, the judgment *nisi* was right upon the theory stated by the trial court. This question we take next.

*Vacated Alley: Title.*

II. Under the facts shown the trial court held that plaintiff should not have sued in ejectment, but should have brought his suit for the value of the property, so that the affirmance of the judgment here does not preclude the plaintiff from getting actual justice, if such it desires, in a proper suit. The affirmance of the judgment does preclude the plaintiff from cutting out an eight-foot segment from defendant's depot and railroad tracks. We think the court was right in holding that the plaintiff should have sued for the appropriation of the property, rather than for the property itself. Cases of this kind stand upon a little different

*Ejectment or Damages.*

footing from cases where pure individual rights are involved. The public service is a proper matter for consideration in a way. Public service by a common carrier might be brought to naught, if an individual could eject it from an eight-foot strip across its right of way, at a point along its line midway between the two ends. Of course the supposed case is not exactly this case, but the legal principle which governs the one is the same which must be applied to the other. The courts have been very loath to allow ejectment in any case where the public service would be crippled by the act of ejectment. They do not put it upon the ground that the public service would be hampered, but they have been diligent in finding doctrines upon which the ends of the public good would be met, without injuring the substantial rights of the individual property owner.

The facts in this case estop the plaintiff from claiming the land in kind. Giving the lease the full force for which the plaintiff contends, yet the plaintiff for some years after its expiration stood by and saw the defendant use the property, and later permitted it to go to the expense and trouble of condemning lands on the other side of it. These and the other facts in the record heretofore detailed authorized the judgment *nisi.*

In the very early case of Provolt v. Railroad, 57 Mo. l. c. 262-263, WAGNER, J., thus stated the rule:

"In these great public works the shortest period of clear acquiescence, so as to fairly lead the company to infer that the party intends to waive his claim for present payment, will be held to conclude the right to assert the claim in any such form as to the company in the progress of their works, and especially to stop the running of the road after it has been put in operation, whereby the public acquire an important interest in its continuance. The party does not, of course, lose his claim or the right to enforce it, in all proper modes. . . . But it is certain, according

to the English decisions, that he cannot stop the works, and especially the trains upon the road, if he has in any sense, for the shortest period, clearly given the company, either by his express consent, or by his silence, to understand that he did not intend to object to their proceeding with their construction and operation.''

Again in Gray v. Railroad, 81 Mo. 126, we cited with approval this Provolt case, and further said:

''If from negotiation in regard to the price of the land, or for any other reason, there be just ground of inference that the works have been constructed with the express or implied assent of the landowner, it would seem wholly at variance with the expectation of the parties, and the reason of the case, that the landowner should retain the right to enter upon the land, or to maintain ejectment. There are other effective and sufficient remedies. . . . The only question we are called upon to decide is, whether, under all the facts and circumstances of this case, ejectment will lie, and we think it will not.''

In Kanaga v. Railroad, 76 Mo. 207, this court used the following language:

''It is well settled law, in this State, that if the owner of land encourages or permits a railroad company to enter and construct its road upon his land, he cannot afterward maintain his action of ejectment to recover possession of the part so taken for a roadbed. [Provolt v. C., R. I. & Pac. R. R. Co., 57 Mo. 256; Baker v. C., R. I. & Pac. R. R. Co., 57 Mo. 265; Hubbard v. K. C., St. Jo. & C. B. R. R. Co., 63 Mo. 68.]''

The rule announced in these earlier cases has been consistently followed. [Bradley v. Railroad, 91 Mo. 499; Alexander v. Railroad, 138 Mo. l. c. 473.]

The case law does not deprive a plaintiff of the right to recover for his property, but for public reasons precludes him from the remedy of ejectment. In

other words, as said in the Alexander case, supra. "under such circumstances he is estopped from bringing an action in ejectment."

So we say in the case at bar. The circumstances in evidence preclude, on the ground of estoppel, the plaintiff from bringing and maintaining ejectment. Whether he has any remedy at all, we do not now say. It is sufficient to say that the judgment *nisi*, predicated, as it is, should stand. Let the judgment be affirmed. All concur.