**Billy Joe LUTTRELL and Patsy Joan
Luttrell, Plaintiffs-Respondents,**

v.

**STATE HIGHWAY COMMISSION of
Missouri, Defendant-Appellant.**

No. 31630.

St. Louis Court of Appeals.

Missouri.

May 19, 1964.

Motion for Rehearing or to Transfer
to Supreme Court Denied
June 22, 1964.

Robert L. Hyder, Wilkie Cunnyngham,
Jefferson City, for defendant-appellant.

Vogel & Frye, Raymond H. Vogel, Cape
Girardeau, for plaintiffs-respondents.

BRADY, Commissioner.

After completion of a jury-waived trial, the trial court entered judgment ejecting the State Highway Commission of Missouri, hereinafter referred to as the defendant, from certain land upon which it had constructed and was maintaining supplemental State Highway "H". The trial court also awarded $100.00 damages to the Luttrells, hereinafter referred to as the plaintiffs. Defendant appeals.

One William Criddle had originally owned the land upon which the highway was constructed. At his death in 1939 his widow, Tena Criddle, and two sons, Oda and Elam Criddle, were then living. Elam Criddle died in 1944, and Mrs. Luttrell, his only child, inherited his one-half interest in the farm. Tena Criddle, Mrs. Luttrell's grandmother, was living on the farm just prior to the construction of the highway, and the defendant secured a conveyance of the right of way from her on January 9, 1956. During the construction of the road Tena continued to live on the farm except for short visits to her son Oda Criddle who lived just to the north and across the road from Tena Criddle's house. In May of 1960 after completion of the highway but prior to the institution of this action, Oda Criddle and his wife conveyed their one-half interest in this farm to the plaintiffs.

The plaintiffs were living in Cape Girardeau, Missouri, while this highway was being constructed and knew of its construction. The highway is of a permanent type.

The plaintiffs filed their petition with the trial court on July 18, 1961. That document alleged that plaintiffs were the legal owners of certain land which was described by metes and bounds that on May 9, 1960 " * * * defendant entered into possession of and unlawfully withholds * * * " a portion of that land, describing

Highway "H", from the plaintiffs; that "The monthly rents and profits of the lands so withheld by defendant are the sum of One Hundred Dollars ($100.00)"; and that "As a direct result of the defendant's actions aforesaid plaintiffs have been damaged in the sum of Fifteen Hundred Dollars ($1500.00)." The prayer was for judgment for possession, for $1,500.00, and for $100.00 per month from the entry of judgment until possession was restored to plaintiffs. During the trial the plaintiffs waived all claim for monthly rents and profits.

The defendant's answer alleged that it could not be held liable for any tort; that Highway "H" was a permanent state highway; that the plaintiffs failed to object while the highway was being constructed and the large sums of money required were being expended although plaintiffs knew of the construction of the highway; and that since the plaintiffs did not file their action within five years after defendant took possession their action is barred by the five-year statute of limitations. Paragraph 7 of the answer stated the allegation that by reason of the construction of the highway the benefits to the remaining land have so increased its value that the market value of the entire tract was greater after the construction than before it.

The trial court found that " * * * the Plaintiffs were entitled to the possession * * *" of the right of way in defendant's possession. It also found that " * * * Defendant has committed injury and waste on said land and thereby Plaintiffs have been damaged in the sum of One Hundred Dollars ($100.00) * * *." The court ordered " * * * that Plaintiffs have and recover of the Defendant, the possession * * *" of the land and that " * * * Plaintiffs have of the Defendant the sum of One Hundred Dollars ($100.00) * *."

The defendant's principal allegation of error is that the plaintiffs have failed to state a claim upon which relief can be granted. The first reason given by the defendant to support that contention is that it cannot be held liable in tort for any injury or waste committed upon the land. Examination of the transcript discloses that plaintiffs held fast to their theory they were entitled to damages throughout the trial. This attitude was illustrated by their objection to any evidence as to what effect the building of the highway had on the market value of the farm. In this connection plaintiffs' counsel stated that " * * * Evidence of the market value of this land or the effect of building a highway on the land has nothing to do with this lawsuit." At another point plaintiffs' counsel stated to the court in his opinion it did not make " * * * any difference whether the market value of the farm has been improved or not." The trial court adopted this theory and stated that it was admitting the evidence with regard to improvements to the land resulting from the construction of the highway as bearing on the request for damages in connection with the ejectment. In this regard the trial court stated: "Mr. Vogel, you have alleged in your petition that when the State Highway Department took the land it is damaging to your client. You have alleged that it is damaging to a certain amount. I believe that the value of the land before and after would definitely tend to show whether or not your clients are damaged insofar as the highway department's use of this land is concerned."

The plaintiffs do not direct any portion of their brief to this issue thereby tacitly conceding the error of the trial court's action. They could hardly do otherwise, for it is settled law in this state that the defendant is not liable in an action for tort. Bush v. State Highway Commission of Missouri, 329 Mo. 843, 46 S.W.2d 854; Broyles v. State Highway Commission of Missouri, Mo.App., 48 S.W.2d 78. In State ex rel. State Highway Commission v. Riggs, 226 Mo.App. 1053, 47 S.W.2d 178, the same rule is stated in a case similar to the instant case in that both involved alleged injuries to land. See also Smith v. Aldridge Con-

struction Company, Mo.App., 356 S.W.2d 532. We hold the defendant is not liable in tort and the trial court's award of $100.00 damages was erroneous.

The defendant also contends that plaintiffs failed to state a claim upon which relief could be granted for the reason that ejectment will not lie in the instant case. To support their contention that ejectment will lie plaintiffs cite the following cases: Barker v. St. Louis County, 340 Mo. 986, 104 S.W.2d 371; McCarty v. Clark County, 101 Mo. 179, 14 S.W. 51; Armstrong v. City of St. Louis, 3 Mo.App. 100, 69 Mo. 309; Tebbs v. Platte County, 325 Mo. 304, 28 S.W.2d 656; Hammerslough v. Kansas City, 57 Mo. 219; Bradley v. Missouri Pac. Ry. Co., 91 Mo. 493, 4 S.W. 427; Beetschen v. Shell Pipe Line Corp., Mo.App., 248 S.W.2d 66, transferred 363 Mo. 751, 253 S.W.2d 785. The questions presented and decided in the Barker case were (1) whether the statute providing for the old county court condemnation procedure was constitutional, and (2) whether the effect of the Barker decision should be retroactive or prospective. The question of ejectment is casually disposed of at the beginning of the opinion in the following language: " * * * Plaintiff's case is based solely on the theory that the proceedings resulting in taking his property without just compensation are utterly void. If so, ejectment is a proper remedy. Tebbs et al. v. Platte County, 325 Mo. 304, 28 S.W.(2d) 656."

The Tebbs case which was cited by the court in Barker as sole authority for the statement that ejectment is the proper remedy, was decided in 1930. It was an action against Platte County to recover the value of the land taken for a road and damages from the remainder of the tract resulting from such taking. The court held that in opening a county road across plaintiff's land after a defective condemnation Platte County was the agent of the State of Missouri, and therefore the action would not lie. The only reference to ejectment that appears in the case is the voluntary statement recited after the decision was reached that " * * * If the proceeding for opening the road was void, as appellants contend, their remedy is in ejectment. McCarty v. Clark County, supra."

The McCarty case referred to did allow ejectment. McCarty v. Clark County, supra. The court stated that ejectment did lie against a county the same as against the city to recover land which has wrongfully been taken and converted into a public road. At page 182 of the report of this case in 101 Mo., at page 51 of 14 S.W., the court said: "It was long ago held by this court that ejectment would lie against a city to recover land which the city had wrongfully taken and converted into a public street. Armstrong v. [The] City of St. Louis, 69 Mo. 309. * * * "

In Armstrong v. The City of St. Louis, supra, the sole authority cited in the McCarty case to support the ruling that ejectment would lie, the court approved ejectment, damages of $15,000, and monthly rents and profits of $83.93. The court stated that the principal question there presented was whether an action of ejectment will lie against the city by the owner of land wrongfully taken by the city and converted into and used as a public street. The court recognized that there were authorities holding that the action could not be maintained and examined a number of cases from other states in which ejectment was denied on the ground that the city or other defendant was only claiming an easement for public use and that the plaintiff still had the fee simple title. The court rejected this theory pointing out that the action of ejectment originally was an action of trespass and stating that it was not necessary that the defendant should own or claim a freehold estate in the land involved but would be sufficient if he had ousted the owner from possession. The case actually turned upon this point, the court stating: " * * * The right to maintain an ejectment against a party in possession does not depend upon the right he claims in the premises, but upon the wrong he has done the claimant, if the true

owner. If he has turned him out of possession and holds the premises against him, it does not matter what interest he claims."

The Hammerslough case cited by the plaintiffs and referred to by the court in Armstrong was a suit to enjoin the city in which the court stated: "The remedy of the plaintiffs, if they claim the sale to the city as void, was an action of ejectment, and if they admitted the sale, they could sue for the purchase money. We see no grounds for an injunction. * * *"

It is apparent that of the cases cited by the plaintiffs only the McCarty and Armstrong cases constitute actual authority for the contention that ejectment will lie in situations such as this. In the other cases the point was not squarely presented nor ruled, and the court's remarks as to the remedy of ejectment constitute dicta. In addition the court in the Armstrong opinion cites three early cases, Walker v. Chicago, R. I. & P. R. Co., 57 Mo. 275; Evans v. Missouri, I. & N. Ry. Co., 64 Mo. 453; and Walther v. Warner, 25 Mo. 277, where the remedy of ejectment was held available. The Walther case is important, for it contains a clue as to the reasoning upon which the line of cases supporting the plaintiffs' contention may rest. At 25 Mo., l. c. 288 the court points out that a distinction had existed between taking of private property by a government which was assumed to have unlimited and continuing ability to pay and the taking of private property by private corporations which were often in a continuing state of bankruptcy.

The cases cited by plaintiffs and discussed above have not been overruled. However, a line of cases holding that ejectment will not lie also exists. Provolt v. Chicago, R. I. & P. R. Co., 57 Mo. 256 (1874) is such a case. That case is an example of those that deny the remedy of ejectment and base the denial upon a theory of waiver or acquiescence. In Provolt v. Chicago, R. I. & P. R. Co., supra, at l. c. 261–262 of 57 Mo. the court states: "There is no pretense here that the defendant had acquired a valid legal title; but the

point stressed for consideration is, whether the circumstances connected with it— taking possession of the property and constructing its tracks and operating its road —will preclude a remedy by the action of ejectment. * * * It is very clear from the record, that the plaintiff was cognizant of all the facts and knew every step taken by the company in regard to the location, construction and operation of the road over his property. He made no objection whatever to anything that was done in that respect, only objecting to the report of commissioners on account of the inadequacy of the assessment." And at l. c. 263 of 57 Mo. the court quotes with approval from McAuley v. Western Vermont Railw., 33 Vt. 311, as follows: "* * * In these great public works the shortest period of clear acquiescence, so as to fairly lead the company to infer that the party intends to waive his claim for present payment, will be held to conclude the right to assert the claim in any such form as to the company in the progress of their works, and especially to stop the running of the road after it has been put in operation, whereby the public acquire an important interest in its continuance. The party does not, of course, lose his claim or the right to enforce it, in all proper modes. He may possibly have some rights analogous to the vendor's lien in England and here, until the legislature cut it off. But it is certain, according to the English decisions, that he cannot stop the works, and especially the trains upon the road, if he has in any sense, for the shortest period, clearly given the company, either by his express consent, or by his silence, to understand that he did not intend to object to their proceeding with their construction and operation. * * *"

Another statement of this theory for denying ejectment is to be found in a case cited by plaintiffs. In Bradley v. Missouri Pac. Ry. Co., supra, the court held (91 Mo. 493, l. c. 499, 4 S.W. 427, l. c. 428): "Where the owner of land, it has been held, does not insist upon prepayment of the damages or other considerations for the

right of way, but by his acquiescence or license induces or permits the company to take possession and construct the road, he cannot maintain ejectment thereafter for the land, because of a failure to pay the damages or other considerations. * * *"

When this problem has come before our Supreme Court in more recent times, the result has been the same as that reached in Provolt, but the grounds upon which that decision rested have been restated in terms of "public policy." An example is Second Street Improvement Co. v. Kansas City Southern R. Co., 255 Mo. 519, 164 S.W. 515. There plaintiff owned lots 112, 113, and 114 in Kansas City. The railroad company owned the lots east of plaintiff's land and there was a sixteen-foot alley separating the plaintiff's land from the lots owned by the railroad company. The City of Kansas City vacated the alley, and the railway company condemned plaintiff's lots but did not specifically mention any part of the vacated alley. The railway company took possession of the alley and constructed and operated a portion of its depot and tracks thereon. The court held that "The case law does not deprive a plaintiff of the right to recover for his property, but for public reasons precludes him from the remedy of ejectment. * * *" The court placed its decision upon the ground of public policy stating: "Under the facts shown the trial court held that plaintiff should not have sued in ejectment, but should have brought his suit for the value of the property, so that the affirmance of the judgment here does not preclude the plaintiff from getting actual justice, if such it desires, in a proper suit. The affirmance of the judgment does preclude the plaintiff from cutting out an eight-foot segment from defendant's depot and railroad tracks. *We thing (sic) the court was right in holding that the plaintiff should have sued for the appropriation of the property, rather than for the property itself.* Cases of this kind stand upon a little different footing from cases where pure individual rights are involved. The public service is a prop-

er matter for consideration in a way. Public service by a common carrier might be brought to naught, if an individual could eject it from an eight-foot strip across its right of way, at a point along its line midway between the two ends. Of course the supposed case is not exactly this case, but the legal principle which governs the one is the same which must be applied to the other. The courts have been very loth to allow ejectment in any case where the public service would be crippled by the act of ejectment. They do not put it upon the ground that the public service would be hampered, but they have been diligent in finding doctrines upon which the ends of the public good would be met, without injuring the substantial rights of the individual property owner." (Emphasis supplied.)

■ Rivard v. Missouri Pac. R. Co., 257 Mo. 135, 165 S.W. 763, an En Banc decision in 1914, involved an action by remaindermen to recover the value of land appropriated by the defendant and used as a part of its track and right of way. An indication of the complexity of the issue is to be found in how the court divided in the decision of the case which was as follows: "GRAVES and WALKER, JJ., concur; GRAVES, J., in opinion filed. WOODSON and WALKER, JJ., concur. WOODSON, J., concurs in paragraphs II and III and in result. BROWN and FARIS, JJ., and LAMM, C. J., concur in result; LAMM, C. J., in opinion filed, in which WOODSON, GRAVES, and WALKER, JJ., concur." While Lamm, J. concurred in the result reached, three other justices (thus a majority of the court) joined him in placing the decision on the grounds that ejectment would not lie. In that opinion Judge Lamm said: "My reasons for concurring in the result reached by my Brother are these: *It is the settled doctrine of this court that a party whose land has been appropriated by a railway company for quasi public purposes, as was this land, is not entitled to recover the possession of the land by ejectment or by any possessory action.*

*His remedy is for the value of the land wrongfully appropriated.* The solidest grounds exist for that proposition which those curious in that behalf may verify by consulting the cases (Second St. Imp. Co. v. Railroad, [255 Mo. 519] 164 S.W. 515, just handed down, and not yet officially reported, and cases cited), and which grounds these plaintiffs recognized in bringing their suit in its present form for value, and not for possession * * *." The plaintiff Patsy Luttrell testified that she knew the road was being built, and the evidence also is that nothing was done or said to stop the construction nor was any complaint made until well after the completion of the road. Under these circumstances the remedy of ejectment is not available to the plaintiffs. Second Street Improvement Co. v. Kansas City Southern R. Co., supra; Rivard v. Missouri Pac. R. Co., supra; Provolt v. Chicago, R. I. & P. R. Co., supra.

The plaintiffs also cite and rely upon Beetschen v. Shell Pipe Line Corp., supra, to support their contention that ejectment will lie. A careful reading of that case discloses that it is not authority for the plaintiffs' position. As this court pointed out in its opinion in Beetschen, the remedy sought and the measure of damages differ in cases which involve fences and other improvements not constituting " * * * a permanent improvement, resulting in a permanent injury to the inheritance so that the whole damage could be estimated in one action * * *" (248 S.W.2d, l. c. 71) and those cases where there is a permanent structure erected on the land taken. Thus, in the consideration of Beetschen upon transfer the Supreme Court emphasized it was the temporary nature of the improvement, a fence, that resulted in the decision that the " * * * plaintiffs were not compelled to recover all damages in a single action." (253 S.W.2d, l. c. 788) Citing the Restatement of Torts, Sec. 164, as the general rule, the court states: (253 S.W.2d, l. c. 788) "As the appellant urges, there is an exception to this rule of liability and

measure of recovery where the appropriation is permanent and 'where the actor is a public utility which could by condemnation proceedings have acquired a privilege permanently to maintain on the land the structure, chattel or other thing, unless it appears that the actor does not intend so to maintain it.' 1 Restatement, Torts, p. 373; Prosser, Torts, note p. 91. But the exception does not mean that every trespass by a corporation invested with the power of eminent domain is permanent or *compels a single action for all damages sustained by reason of the unlawful appropriation or invasion.* Doyle v. [Kansas City] & S. Ry. Co., supra [113 Mo. 280, 20 S.W. 970]. In all the instances in which the rule has been applied the landowner in fact sought and prosecuted to a conclusion an action to recover all damages sustained. In several of those actions the trespassing corporation appealed and contended that the taking or injury was not permanent and that recovery could only be had for temporary damages. Blankenship v. Kansas Explorations, 325 Mo. 998, 30 S.W.2d 471. And in all those instances the appropriation was in fact necessary for the very public purpose for which the easement could have been acquired in a condemnation proceeding. This is particularly true of the cases in which a railroad corporation, without authority, appropriates a right of way and constructs a railroad across land. *The appropriation is permanent, it is for a public railroad purpose for which the right of way could have been condemned, and the measure of the landowner's recovery and damages is the same as in condemnation.* (Citing cases.) * * *" (Emphasis supplied.) Read in its correct light Beetschen is not authority for the plaintiffs at all. It is a case involving an improvement which was not permanent as contrasted to the permanent nature of the improvement in the instant case. Not only is the case easily distinguishable on this ground but actually supports the defendant's contention as this appropriation is permanent and is for a public purpose for which the right of way could have been condemned.

The plaintiffs contend that reversal will be manifestly unfair to them, as it would require them to bring their action for "reverse condemnation" in Cole County, Missouri, some distance away from the location of their farm. The question of that venue is not before us, and we do not pass upon it other than to point out that the circumstances of which plaintiffs complain resulted from their failure to join issue by pleading in answer to paragraph 7 of defendant's answer, by adducing proof on the issue there raised, and by their successful efforts to have defendant's proof offered in support of the allegations of paragraph 7 confined to the issue of damages for ejectment.

The plaintiffs failed to state a claim upon which relief could be granted. The judgment should be reversed. The Commissioner so recommends.

PER CURIAM:

The foregoing opinion of BRADY, C., is adopted as the opinion of this court. The judgment is reversed.

RUDDY, P. J., and WOLFE and ANDERSON, JJ., concur.