MAY E. RIVARD et al. v. MISSOURI PACIFIC RAILWAY COMPANY, Appellant.

In Banc, April 2, 1914.

1. **JUDGMENT: Rendered on Agreed Statement: Burden.** The proper judgment to be rendered upon an agreed statement of facts is a mere legal conclusion, and the burden rests upon plaintiffs to show that the judgment in their favor is the only one which could have been rendered under the applicatory law.

2. **ACKNOWLEDGMENT:  Married Woman:  Prior to Enabling Act:  Private Seal of Mayor.** A deed made in 1857 by a married woman and her husband, "acknowledged in proper form before M. J. Payne, Mayor of the City of Kansas" and reciting that the same was given "under his hand and private seal, there being no seal of office provided," conveyed land lying in Jackson county belonging to the wife.  The acknowledgment containing a recital of every necessary statutory requirement, including an examination of the wife separate and apart from her husband, the failure to style the seal impression following the name of the officer an "official seal" did not affect the validity of the conveyance as between the parties thereto or as to her heirs.

3. **MARRIED WOMAN'S DEED:  Correction in Matters of Description.** A married woman prior to the enabling acts could convey her land by joining her husband in a deed; and if such was made and acknowledged in full conformity with all legal requirements on her part, a court of equity in 1857, having acquired jurisdiction of her and her husband by publication to them as non-residents, also in strict compliance with law, had power to correct the deed in matter of description of the land, and such decree vested the title in the deed's grantees as fully as if the deed had contained a true description.

   *Held*, by GRAVES, J., with whom WOODSON and WALKER, JJ., concur, that said decree, reciting that "it is ordered, adjudged and decreed that the title to said real estate pass to and vest in plaintiffs as against defendants, as well as against all others claiming under them," not only corrected the misdescription in the deed, but went further and vested the title in the plaintiffs; and not being void upon its face, is an insurmountable barrier to a recovery by the heirs of the defendants therein in a collateral suit, in total disregard of any defect in the deed or its acknowledgment.

4. **———:  ———:  Jurisdiction.** There is a wide distinction between the erroneous exercise of jurisdiction and a lack of jurisdiction. A court of equity had jurisdiction in 1857 of the subject-matter of correcting a misdescription of the land in a deed made by a married woman, and if it acquired jurisdiction over her person in the manner prescribed by statute, any errors committed by it in the trial of the case can be corrected only by appeal, and its decree correcting the description cannot be successfully attacked in a collateral proceeding, either by her or her heirs. If the court had no jurisdiction, then its decree is void, and it can be collaterally assailed.

5. **ESTOPPEL:  Available Though not Pleaded.** Where the basis of the defense of estoppel appears in the agreed statement of

facts which plaintiffs offered in evidence as the ground of their right to recover, estoppel is available against them without being specially pleaded.

6. ――――: Recovery for Value of Land Sold: Accounting for Consideration. In a suit for the value of land appropriated by a railway company, which is a mere substitute for ejectment for the land itself, the plaintiffs cannot recover without accounting to the defendant for the money paid to their ancestor for a deed, made by her, alleged to be void because she was at the time a married woman and there were such irregularities in her acknowledgment as it is alleged rendered the deed invalid.

7. LIMITATIONS: Suit for Value of Land Appropriated by Railroad: When Cause of Action Accrued: Life Estate. *Held*, by LAMM, C. J., in a concurring opinion, in which a majority of the judges concur, that, it being settled doctrine that a party whose land has been appropriated by a railroad company for *quasi*-public purposes, is, for reasons of estoppel, not entitled to recover the possession of the land by ejectment or by any possessory action, but his remedy is for the value of the land wrongfully appropriated, the cause of action of a married female owner who had previously by a defective deed conveyed it, to recover such value, accrued, if at all, when the railway company openly, obviously, entirely and wrongfully appropriated it, and it accrued to her heirs, if at all, upon her death, even though it was thereafter burdened by a curtesy in favor of their father; and hence as she died in 1877, a suit brought by such heirs within ten years after the father's death in 1899, was barred by delay. In such case the question of the right to possession and when a possessory right accrued to the heirs is not involved, but is entirely out of the case.

Appeal from Jackson Circuit Court.—*Hon. James E. Goodrich,* Judge.

REVERSED.

*Martin L. Clardy* and *Edw. J. White* for appellant.

(1) The proposition embraced in the first declaration, that the deed from Rivard and wife to Houck et al., was a nullity as to the wife's interest, because not acknowledged as required by the statutes in force at the time, is clearly error. The conveyance of a wife's

separate property is not void, because not acknowledged. Seivers v. Kleeburg, 56 Mo. 196. A deed executed by husband and wife jointly of lands inherited by her, prior to the enactment of Sec. 3295, R. S. 1879, even though the wife's acknowledgment is defective, will transfer to the grantee and those claiming under him, the right of possession. Williamson v. Albrect, 89 Mo. 537; Small v. Field, 102 Mo. 104; Sharp v. McPike, 62 Mo. 300. As to this land from her father, Augustine Rivard was a *femme sole,* and capable of contracting. Shroyer v. Nichol, 55 Mo. 264. A defectively acknowledged deed is good between the parties and constitutes a color of title sufficient to put the Statute of Limitations in effect. Dalton v. Bank, 54 Mo. 105; Staples v. Shackleford, 150 Mo. 471. By the statute, all unacknowledged deeds recorded a year before the act of 1887, are held to impart notice. Williams v. Butterfield, 214 Mo. 412. A deed acknowledged before the mayor of Kansas City, under the special charter of Kansas City, of February 22, 1851, was good. Linville v. Greer, 165 Mo. 395. The fact that the notary omits his seal is immaterial, if the deed is admitted to record. Mitchner v. Holmes, 117 Mo. 185. The description of land in a deed made incorrect, through a mutual mistake, is always the subject of correction by a court of equity. Hutsell v. Crewse, 138 Mo. 1. (2) The second declaration of law, that the decree of the court of equity, reforming the deed from Augustine and Louis Rivard to Houck et al., was void, because the court had no jurisdiction to enter such a decree as to Augustine Rivard, is manifestly error. As to this land, cast upon her by descent from her father, Augustine Rivard was a *femme sole* and capable of contracting. Shroyer v. Nichol, 55 Mo. 264. Although an unacknowledged deed of a married woman was not good as a conveyance, yet it was good in equity as a contract to convey and was susceptible of reformation, the same as a contract of any other competent person. Kirkpatrick v. Pease, 202

Mo. 471. Although not acknowledged, the deed of a married woman, as to her separate estate, is sufficient to pass the equitable fee. Small v. Field, 102 Mo. 104; Sharp v. McPike, 62 Mo. 300. And the correction of a deed to land that a wife inherits and as to which she could make a valid contract, is authorized in Missouri. McReynolds v. Grubb, 150 Mo. 352. (3) Declaration No. 6, given by the court, to the effect that the Statute of Limitations did not commence to run in this case, in favor of the defendant or anyone under whom it claims, and against Mrs. Rivard and her grantees, or heirs, until the death of her husband, Louis Rivard, is directly counter to the settled principles of law and the decisions in this and other States. This declaration is based upon the erroneous theory that Louis Rivard held a life estate in this land at the time of his death as an estate by curtesy, cast upon him by the law on the death of his wife, Augustine Rivard. Where land was in the adverse possession of another, at the time of descent cast upon a married woman, the Statute of Limitations immediately attached and affected the whole estate. Dehatre v. Edwards, 200 Mo. 246. There can be no tacking of disabilities under the Missouri limitation statute. Rutter v. Carothers, 223 Mo. 631. The heirs of Augustine Rivard had only three years after her death to sue. McKee v. Downing, 224 Mo. 115. And where limitation has commenced to run against an ancestor before descent cast, it continues to run without interruption against the heir under disability. Schoffer v. Dettie, 191 Mo. 377. This declaration No. 6, that the Statute of Limitations did not commence to run until the death of Louis Rivard, is based upon the erroneous proposition that he had a valid curtesy in the land at the time of his death. Such a conclusion is wholly inconsistent with the facts admitted, that neither Augustine Rivard, nor her husband nor those under whom they claimed had ever been in possession of the land, nor paid any taxes thereon, since the year 1857, be-

cause the wife did not have seisin sufficient to base an estate of curtesy upon. Evans v. Morris, 234 Mo. l. c. 188; 1 Washburn R. P. (5 Ed.), p. 122; Tiedeman's R. P. (3 Ed.), sec. 80; Cox v. Boyce, 152 Mo. 581; Martin v. Trail, 142 Mo. 85; Dozier v. Tolson, 180 Mo. 550. "Mere right of entry or right of action. In this there is no curtesy, for want of actual seisin." Dozier v. Tolson, 180 Mo. 551.

*Elijah Robinson, R. J. Ingraham, Frank P. Sebrec, J. H. Hawthorne, Wm. G. Holt, John G. Schaich* and *John G. Park, amici curiae* for certain parties situated similarly to appellant.

*James C. Williams* and *L. H. Waters* for respondents.

(1)   The deed dated May 14, 1857, from Augustine Rivard and Louis Rivard her husband, to Solomon Houck and others was defectively acknowledged and a nullity as to Augustine Rivard, because: At the time this deed was made, the mayor of Kansas City, before whom it was acknowledged, was not authorized to take the acknowledgment of a married woman. Under the Revised Statutes of 1845, only a court having a seal or some judge, justice or clerk thereof was authorized to take the acknowledgment of a married woman. R. S. 1845, secs. 17, 37, pp. 221, 225. The act incorporating Kansas City approved February 22, 1853, in article 2, section 1, provided that article 3 of the act incorporating St. Joseph shall be applicable to Kansas City. Laws 1853, p. 244, art. 2, sec. 1. Sec. 6 of article 3 of the St. Joseph act authorizes the mayor of St. Joseph to take depositions and acknowledgments of deeds, etc., and requires him to certify the same under the seal of the city. Laws 1851, p. 90, art. 3, sec. 6. The Revision of 1855 was made by the Legislature and each chapter of that revision

was a separate act.   Chapter 32 was entitled "An Act
Regulating Conveyances" and was approved December
11, 1855. That act provided that every conveyance of a
fee or of a freehold estate should be acknowledged
by some court having a seal, or by some judge, justice
or clerk thereof, notary public or some justice of the
peace of the county where the land is situated.  R. S.
1855, pp. 357, 358, secs. 15, 16, 17.   Section 17, p. 358,
R. S. 1855, amended Section 17, p. 221, R. S. 1845, by
authorizing a notary public to take the acknowledgment
of a deed. Section 37, p. 363, R. S. 1855 amended section
37, p. 221, R. S. 1845, by enacting that "any court,
judge, justice or clerk thereof or other officer author-
ized by this act to take the acknowledgment of a deed
may take and certify the acknowledgment of a married
woman, etc." A subsequent statute revising the whole
subject of the former one, and evidently intended as a
substitute for it, operates to repeal the former, al-
though it contains no express words to that effect.
State ex rel. v. Skidds, 230 Mo. 102; Hudson v. Wright,
204 Mo. 423.  As under section 37 of the act of 1855 no
officer could take the acknowledgment of a married
woman except those authorized by section 17, it follows
that the mayor of Kansas City, not being included in
either section had no power to take the acknowledgment
of Mrs. Augustine Rivard on May 14, 1857 and that
the deed was a nullity as to her.   While section 37 of
the act of 1855 to "Regulate Conveyances" by virtue
of section 17 of the same act authorized a justice of the
peace to take acknowledgment of deeds it did not au-
thorize the mayor to do so, because the provision of
section 6, article 3, of the Act of February 22, 1851 ap-
plicable to Kansas City, with respect to the power of
the mayor to take acknowledgment of deeds, is discon-
nected entirely from the provision of that section de-
fining his power and duties as a justice of the peace. He
took the acknowledgment of the deed in question as
mayor and not as justice of the peace.   As mayor he

was not authorized to take such acknowledgments, under sections 17 and 37 of the Act of 1855. Linville v. Greer, 165 Mo. 395. The Act of 1851 was revised out of the statute in 1855. State ex rel. v. Woodson, 128 Mo. 512; Meriweather v. Love, 167 Mo. 521. If the Act of 1851 was not repealed by the Act of 1855 and the mayor was authorized to take the acknowledgment of such a deed in 1857, then this acknowledgment is fatally defective because it was not certified by the mayor "under the seal of the city" as required by the Act of 1851. The certificate does not purport to be under the seal of the city; on the contrary it is expressly declared to be under his private seal, and therefore this deed was a nullity as to Mrs. Augustine Rivard. Geary v. Kansas City, 61 Mo. 380. Prior to 1889 a married woman could not convey her legal estate except by deed executed and acknowledged as required by statute, nor could she make a valid contract for the sale of such estate, or bind the same in law or equity by any contract of hers. Clay v. Mayer, 183 Mo. 157; Brown v. Dressler, 125 Mo. 592; Wannal v. Kern, 51 Mo. 150; Shaffer v. Kugler, 107 Mo. 64; Marshall v. Anderson, 78 Mo. 85. The acknowledgment of a married woman's deed in the conveyance of her land is as essential as her signature. Hoskinson v. Adkins, 77 Mo. 540; Hord v. Taubman, 79 Mo. 103. And such a deed is absolutely void. McReynolds v. Grubb, 150 Mo. 363; Bagley v. Emberson, 79 Mo. 140; 2 Story Eq. Jur., sec. 1391. Such a deed is absolutely void and of no more vitality than a piece of blank paper. Marriner v. Saunders, 5 Gil. Ills. 125. (2) The deed in question although defectively acknowledged by the wife, operated as a conveyance of Rivard's marital interest. Having been of record over 30 years its execution as to him is assumed. Linville v. Greer, 165 Mo. 395; Bradley v. Railroad, 91 Mo. 498; Beal v. Harmon, 38 Mo. 435. (3) Mrs. Augustine Rivard acquired her interest in the land in controversy on the death of her father, Gabriel

Philibert in 1854, by inheritance. The estate thus acquired was a pure legal estate and not a separate equitable estate and consequently the deed in question was a nullity as to her. O'Reilly v. Kluender, 193 Mo. 582; Clay v. Mayer, 183 Mo. 157. The Married Woman's Act of 1889 was prospective and did not affect Mrs. Rivard's estate. Graham v. Ketchum, 192 Mo. 29; Vanata v. Johnson, 170 Mo. 269. (4) The decree relied on by appellant, insofar as it attempts to reform the deed in question, as to Mrs. Rivard, and to vest her estate in Houck and others, is a nullity as to Mrs. Rivard. The jurisdiction of a cause is the power of a court over the subject-matter given by the laws of sovereignty in which the tribunal exists. Fithian v. Monks, 43 Mo. 522. Jurisdiction is the power to hear and determine the subject-matter in controversy between the parties to a suit. The question is whether on the case before the court, their action is judicial or extra-judicial, with or without the authority of law to render a judgment or decree upon the rights of the litigant parties. If the law confers the power to render a judgment or decree, then the court has jurisdiction. Rhode Island v. Mass., 10 Pet. 718. It is defined to be the power to hear and determine the particular case involved. Royer on Sales, sec. 59. This definition was approved in this State. Gray v. Bowles, 74 Mo. 423. The question is, has the court authority to decide the question at all. Chase v. Christiansen, 41 Cal. 253; Vorhees v. Bank, 10 Peters, 474; Shriver v. Lynn, 2 How. 43; Fithian v. Monks, 43 Mo. 21, 150 U. S. 192, 114 U. S. 192; Carr v. Williams, 10 Ohio, 311. And a judgment or decree in a case where the court had no power to render it, is a nullity and may be impeached collaterally. Higgins v. Paltzer, 49 Mo. 152; Fithian v. Monks, 43 Mo. 502; Smoot v. Judd, 184 Mo. 542. The court of equity has no jurisdiction of a case to reform the deed of a married woman unless given by an express statute. Jones on Deeds,

sec. 1212. "A court of equity has no coercive power so far as concerns the wife, to compel specific performance, to reform her deed or do any other act or thing which will divest the title out of a married woman." Meier v. Blune, 80 Mo. 84; Rannels v. German, 80 Mo. 483; Conrad v. Schwuab, 53 Wis. 372; Merchant v. Builders, 144 Ind. 11; Hutchings v. Huggins, 59 Ill. 29. The doctrine of reforming instruments is not applicable to one that is void. Evarts v. Seger, 6 Ore. 55. A deed otherwise defective cannot be rendered valid under the pretext of correcting a mistake in the description. Dickinson v. Railroad, 13 Mich. 356. As the law stood when suit was brought to reform her deed, Mrs. Rivard was not even competent to employ an attorney to defend her. Higgins v. Peltzer, 49 Mo. 157. Courts have no power to reform a void instrument. It is beyond their jurisdiction. Hedges v. Dixon Co., 150 U. S. 192; Brazonia Co. v. Bridge Co., 80 Fed. 10; Parish v. Camplin, 139 Ind. 1; Litchfield v. Ballou, 114 U. S. 192. When an intrument is void, a decree reforming the description leaves the instrument still inoperative. Longmede v. Weaver, 65 Ohio St. 17. After a court of equity corrects a mistake made in a deed the instrument so corrected will be regarded as the deed made by the parties. Rackliffe v. Seal, 36 Mo. 319; Shroyer v. Nickell, 55 Mo. 264. The deed of a married woman cannot be reformed as to her legal estate. McReynolds v. Grubb, 150 Mo. 364; Pearl v. Hervey, 70 Mo. 160; Bagby v. Emerson, 79 Mo. 139; Martin v. Hargadine, 46 Ill. 324. Such a deed cannot be made the basis of any action at law or in equity. Pearl v. Hervey, 70 Mo. 167. Equity does not have the power to make such a deed speak the intention of the wife by reforming it. Atkinson v. Hervey, 80 Mo. 153. "This disability can be overcome only by adopting the precise means allowed by the law to dispose of her real estate; as in England by fine, and in America by a solemn con-

veyance." Story Eq. Jur., sec. 1391. Mrs. Rivard "could only have been divested of her title in the mode expressly provided by the statute, to-wit, by a deed which means of course a perfect and complete instrument." Hord v. Taubman, 79 Mo. 103. Such a deed "confers on the grantee no equity upon which to base a decree giving him the legal title." Bagby v. Emerson, 79 Mo. 139. The only effect of a decree reforming a deed is to make the deed read as it should have done. Peterson v. Grover, 20 Me. 363; Adams v. Stevens, 49 Me. 362. If the court had no jurisdiction of the subject-matter of the suit, which was the reformation of the deed of a married woman, the decree is a nullity. If it had jurisdiction of the subject-matter and did reform the deed by correcting the description, the defective acknowledgment was not thereby cured and the deed as reformed was still a nullity. Dickinson v. Glenney, 27 Conn. 111; White v. Railway, 13 Mich. 356; Hausman v. Adams, 65 Mo. App. 279. (5) The petition in Houck et al. v. Rivard and wife, alleged that there was a mistake in the description of the land and asked the court to correct the mistake and to vest the title in plaintiffs. The statute required the order of publication to state the object and general nature of the petition. R. S. 1855, sec. 13, p. 1224. The order stated that the object and general nature of the petition "is to obtain a judgment or decree" correcting the description and title to a tract of land, setting out that plaintiffs purchased the E. ½ N. W. 6, 49 N. 33 W. and that by mistake the E. ½ S. W. 31, 50 N. 33 W. was inserted in the deed. When the court undertook to correct the mistake, it did all it had jurisdiction to do under the order of publication so far as Rivard was concerned. As to him the deed was reformed and passed his interest. The order omitted to notify defendants that plaintiffs asked to have the title vested in them. Bobb v. Woodward, 42 Mo. 489;

257 Mo. 10

Roberts v. Land Impr. Co., 126 Mo. 460; Winningham v. Trueblood, 149 Mo. 584. All the court by its decree attempted to do was to reform the deed as to the description and "to vest the title in plaintiffs . . . as fully and as amply as though the same had been conveyed in the said deed to plaintiff." When reformed as to description, it still remained a defectively executed deed as to Mrs. Rivard. Shroyer v. Nickell, 55 Mo. 267. (6) Plaintiff's action is not barred under any statute of limitation. Mrs. Rivard died in 1877. Mr. Rivard died May 10, 1899. Plaintiff's action accrued at his death and they had ten years within which time to bring this suit. Dyer v. Wittler, 89 Mo. 81; Dyer v. Brannock, 66 Mo. 423; Graham v. Ketchum, 192 Mo. 26; Wilson v. Frost, 186 Mo. 317. "Neither the thirty-year law nor any other statute begins to run against remaindermen until the life estate is lifted." Hall v. French, 165 Mo. 442; Wilson v. Frost, 186 Mo. 311; McMurty v. Fairly, 194 Mo. 512; Linville v. Greer, 165 Mo. 430. No right of action accrues to the wife or her heirs until her husband (the tenant for life) died and in such a case neither the wife nor heirs are within the purview of either the ten or twenty-four year provisions of the Statute of Limitations while he lives. Dyer v. Wittler, 89 Mo. 81; Graham v. Ketchum, 192 Mo. 26.

## STATEMENT.

This is a suit by the heirs of a daughter of Gabriel Philibert, who with her husband executed a warranty deed to an undivided one-fifth of the real estate cast by descent upon his five children at the date of his death in 1853, to recover the *value* of the land from the defendant railway, which had appropriated it as a part of its tract and right of way, claiming title under the aforesaid deed of plaintiff's ancestor.

Plaintiff's petition asked for judgment as for conversion of the land left by Gabriel Philibert and which

descended to his five children, consisting of about fifty acres. Defendant acquired the title of the four other heirs and after having gotten a deed from the grantees of plaintiff's ancestor and her husband for the remaining one-fifth of the tract, appropriated the entire tract to the uses and purposes of its railway in 1866, and has continued so to use it up to the present time.

The defenses were a general denial and pleas of the various statutes of limitations. The jury was waived and the case was submitted to the court upon the following agreed statement of facts and the supplementary evidence.

## "AGREED STATEMENT OF FACTS.

"For the purpose of saving trouble and expense to the parties hereto, and for the purposes of the trial of this case, it is hereby agreed by and between the said plaintiffs and the said defendant that the following are facts:

"1. The defendant is a railway corporation and occupies and uses as a part of its right of way, and has so occupied and used since 1866, the following described real estate located in West Kansas Addition to Kansas City, Jackson county, Missouri, viz.: [Here follows a description of lands embracing those sued for.] Said above described real estate is a part of the east half of the northwest quarter of section 6, township 49, range 33.

"2. So far as the record title is concerned, plaintiffs and defendant claim through a common source of title, that is, both plaintiffs and defendant claim under Gabriel Philibert, deceased.

"3. Said Gabriel Philibert died intestate in Jackson county, Missouri, in 1853, being then the owner, in fee, of the said east half of the northwest quarter of section 6, township 49, range 33, except the south thirty acres thereof sold to A. B. Canville on the 5th

day of April, 1848, by deed recorded in Book N, page 159, of the records of said county, and also of the east half of the southwest quarter of section 31, township 50, range 33.

"4.   Said Gabriel Philibert left surviving him his widow, Mary C., and five children, viz.: Augustine, Cyprian, Gabriel, Victorine and Eli.  Said Eli died in infancy, leaving as his only heirs his mother and his said brothers and sisters.

"5.   Said Augustine Philibert was married to Louis Rivard in 1854.

"6.   On the 14th day of May, 1857, said Augustine and her husband Louis Rivard, executed and delivered to Solomon Houck, S. H. Woodson, Alexander Majors, Samuel L. McKinney, A. B. Earl, Charles E. Kearney, Samuel Jones, William Liggett, J. S. Ridley and Joseph McCarty a warranty deed to an undivided one-fifth interest in the east half of the southwest quarter of section 31, township 50, range 33, which deed is recorded in Book Z, at page 676, of 'Deed Records' of Jackson county, and contains the following recital: 'The interest granted is derived from Gabriel Phlibert, the father of said Augustine.'

"Said deed was acknowledged, in proper form, before M. J. Payne, mayor of the city of Kansas (now Kansas City), Missouri, and recites that the same is given 'under his hand and private seal, there being no seal of office provided.'

"7.   On the 2nd day in December, 1857, the said Solomon Houck and other grantees in the deed mentioned in subdivision 6 hereof, instituted a suit in the circuit court of Jackson county, Missouri, against Louis Rivard and Augustine Rivard, returnable to March term, 1858, of said court.  The petition in said suit was duly verified and alleges that on the 14th day of May, 1857, the said Louis Rivard and Augustine Rivard, in consideration of the sum of $720 paid to them by said plaintiffs, sold to said plain-

tiffs all their right, title and interest, it being
an undivided fifth, in and to the east half of the
northwest quarter of section 6, township 49, range 33,
and executed and delivered to them a deed
which was intended to describe said last described
real estate, but that by mistake in said deed said de-
fendants described the east half of the southwest frac-
tional quarter of section 31, township 50, range 33,
whereas it was their purpose and intention to convey
said east half of the northwest quarter of section 6;
and also alleged that said defendants were then non-
residents of the State of Missouri. The prayer of
said petition asked the court for a decree correcting
said mistake and vesting in them all the right, title and
interest of said defendants in and to said east half
of the northwest quarter of section 6, township 49,
range 33, and for other proper relief.

"On said 2nd day of December, 1857, the clerk of
said court, in vacation thereof, made an order of pub-
lication, which is as follows:

"'Now at this day come the plaintiffs aforesaid
by their attorney, before the undersigned clerk of
the circuit court of Jackson county, in vacation, and
file their petition and affidavit, stating, among other
things, that the above-named defendants are nonresi-
dents of this State. It is therefore ordered by the
clerk aforesaid, in vacation, that publication be made
notifying them that an action has been commenced
against them by petition in the circuit court of Jack-
son county, in the State of Missouri, the object and
general nature of which is to obtain a judgment or de-
cree correcting the description of a tract of land and
title thereto, setting forth that plaintiffs purchased
of defendants their interests in and to the east half
of the northwest quarter of section 6, township 49,
range 33, and that by mistake the east half of south-
west quarter of section 31, township 50, range 33, was
inserted in the deed made by defendants to plaintiffs,

and unless they appear at the next term of said court to be held at the courthouse in the city of Independence, within the county of Jackson, on the second Monday of March next, and on or before the sixth day thereof (if said term should so long continue, and if not, then before the end of the term), and answer the petition aforesaid according to law, the same will be taken as confessed. And it is further ordered that a copy hereof be published in the "Occidental Messenger" a newspaper published in Jackson county, for four successive weeks, the last insertion to be at least "four weeks before the commencement of said term." A true copy. Attest.

" 'Attest.        SAMUEL D. LUCAS, Clerk.'

"On the 15th day of March, 1858, there was filed in said case the affidavit of William Peacock, Publisher of the 'Occidental Messenger,' in which he stated that the foregoing order of publication, a copy of which was attached to said affidavit, was published in said newspaper for four consecutive weeks, to-wit, on the 5th, 12th, 19th and 26th days of December, 1857, and on the 2nd day of January, 1858. Thereupon the court made and caused to be entered of record an order and judgment reciting:

" 'That plaintiffs by their attorney, come and prove to the satisfaction of the court that they have made publication in pursuance of the order herein against the said defendants, and defendants having failed to appear and file their answer, whereby said petition remains against them undefended. It is considered by the court here that said petition be taken against them as confessed and this cause is continued.'

"At the next term of said court, that is, at the September term, 1858, thereof, and on the 18th day of September, 1858, the court heard the evidence in said cause and rendered judgment in favor of said plaintiffs and against said defendants, and caused the same to be entered of record, which judgment recites:

" 'The plaintiffs come by their attorney, defendants failing to appear. It is ordered and adjudged by the court that the interlocutory judgment rendered last term be and is hereby made final, and this cause is taken up for hearing and submitted to the court on the petition, exhibits and proofs. Whereupon the court finds that the said defendants, for a valuable consideration, to-wit, the sum of $720, to them in hand paid, bargained and sold unto said plaintiffs all their right, title and interest (it being an undivided one-fifth part) in and to the following described real estate lying and being in the county of Jackson and State of Missouri, to-wit: The east half of the northwest quarter of section 6, township 49, range 33, but in attempting to convey the same by deed of 14th of May, 1857, they through mistake inserted in said deed the east half of the southwest quarter of section 31, township 50, range 33, and the court doth further find that said defendants were not the owners of said land inserted in said deed, and that it was their purpose and intention at the time to convey said land first herein described to plaintiffs, and that the allegations of said petition are true. It is therefore ordered, adjudged and decreed by the court here that the mistake in said deed as to the description of said real estate be and the same is hereby corrected, and the title to said real estate, to-wit, the east half of the northwest quarter of section 6, township 49, range 33, lying in Jackson county, Missouri, pass to and vest in plaintiffs as against defendants, as well as against all others claiming under them as fully and as amply as though the same had been conveyed in the said deed made by defendants, as aforesaid. And that a copy of this decree be recorded in the recorder's office to operate as a deed to plaintiff's for said real estate.'

"Said decree is recorded in Book 31, at page 175, of 'Deed Records' of Jackson county.

"8. Whatever title was acquired by said plaintiffs by the said decree set forth in subdivision 7 hereof, is now vested in said defendant, so far as the real estate in controversy in this suit is concerned.

"[Sections 9, 10 and 11 of the agreed statement, simply shows the relationship and succession of plaintiffs to their ancestor Augustine Rivard, who died in 1877.]

"12. West Kansas Addition No. 1, an addition to the city of Kansas (now Kansas City), Missouri, is embraced in and a part of the land mentioned in the decree set forth in subdivision 7 hereof.

"13. On the 5th day of March, 1842, said Gabriel Philibert executed, acknowledged and delivered to Joseph H. Reynolds a deed of trust conveying to him said east half of the northwest quarter of section 6, township 49, range 33, in trust to secure the payment to Thomas Patton, Sr., of two notes dated January 25, 1842, and due twelve months thereafter, and for $240 each. Said deed of trust has never been acknowledged satisfied of record.

"14. On the 6th day of October, 1869, said Augustine Rivard and Louis Rivard, her husband, through their attorney in fact, Peter Rivard, to whom they had executed and delivered a power of attorney, duly acknowledged by them, executed and delivered to L. C. Slavens and Lafayette Traber a warranty deed, conveying to said Slavens and Traber an undivided one-half of all their interest in and to said east half of the northwest quarter of section 6, which deed was duly acknowledged and recorded in Book 72, at page 218, Deed Records of Jackson county.

"15. On the 1st day of April, 1875, L. C. Slavens and wife and Lafayette Traber and wife executed and delivered to said Augustine Rivard a quitclaim deed conveying to her all the right, title and interest which they acquired in said east half of the northwest quarter of section 6 under and by virtue of the deed men-

tioned in subdivision 14 hereof, which deed was duly acknowledged.

"16. The defendant and those under whom it claims have been in the open, notorious possession of the real estate described in subdivision 1 hereof and claiming title thereto continuously. and adversely to all other persons, from the 20th day of March, 1866, to the present time.

"17. Prior to the 14th day of May, 1857, the title, both legal and equitable, to the said east half of the northwest quarter of section 6 emanated from the United States; and since said 14th day of May, 1857, neither of the plaintiffs, nor any one of them, nor any one under whom they claim or might claim, nor any one under whom such person or persons claim or might claim said real estate described in subdivision 1 hereof, have been in possession of said real estate, or any portion thereof, or paid any taxes on said real estate, or any portion thereof; but during all of said period defendant and those under whom it claims, have been in possession of, and paid the taxes on, said real estate.

"18. Either party hereto may introduce, in addition to the facts herein set forth, any competent and relevant evidence provided that it shall not be contradictory of any of the above-recited facts.

"19. On the trial of this case either party may introduce copies of deeds contained in the deed records of Jackson county, Missouri, without accounting for the original of such deeds.

"20. It is further agreed that the parties hereto may introduce testimony as to the value of said land (if necessary) at such time as the court may direct in the trial of the case.

"21. A patent for said east half of the northwest quarter of said section 6 was issued by the United States to Gabriel Philibart on the 20th day of January,

1834. Said Gabriel Philibert and said Gabriel Philibart were one and the same persons."

And thereupon the defendant offered in evidence a quitclaim deed from William Keese and wife to the Missouri Pacific Railway Company, dated August 23, 1878, and recorded in Book B, No. 21, page 625, in the office of the recorder of deeds of Jackson county, Missouri, at Kansas City, which deed was received in evidence and marked Exhibit "4" (which quitclaim deed is in the usual form conveying the property for a consideration of $429.10 and dated the 23rd of August, 1878).

And thereupon defendant offered in evidence Sheriff's deed, from C. B. L. Boothe, sheriff of Jackson county, to William Keese, dated June 17, 1876, and recorded in Book B, No 31 at page 297, in the office of the recorder of deeds of Jackson county, Missouri, at Kansas City (being a deed for the purchase of the property at a tax sale).

And thereupon plaintiff offered in evidence the following stipulation:

"It is further agreed that the two deeds introduced in evidence by the defendant are founded upon a judgment rendered against said Augustine Rivard and Louis Rivard on special tax bills issued against the property therein described for the construction of plank sidewalks."

The defendant then offered in evidence the deposition of Gabriel Philibert; which was received in evidence and read, as follows (as far as relevant):

"Q. Where is your home? A. Wyandotte county, Kansas.

"Q. Who were your parents? A. Gabriel Philibert and Mary C. Philibert.

"Q. Are they living or dead? A. Both dead.

"Q. When did they die? A. Father died in 1853. Mother died in 1885.

"Q.  How many children were born to your father
and mother?   A.  Augustine, Cyprian, Victorine, Ga-
briel, Eli, five children.

"Q.  Whom did Augustine marry?   A. Louis Riv-
ard.

"Q.  When was she married to him?   A.  1854.

"Q.  When did Augustine die?   A. 1877.

"Q.  When did her husband die?   A.  1899, in the
Indian Territory. . . .

"Q.  Where was your sister, Augustine, living
when she married Louis Rivard?   A. · On the old place
in West Kansas City.

"Q.  About how long after your father died was
she married?   A.  About a year.

"Q.  When did you say she died?   A.  1877.

"Q.  Where?   A.  California.

"Q. . How do you know she died there?   A.  By
letters.

"Q.  When do you say her husband died?   A.
I will have to look at my memorandum, there were so
many deaths.  He died in 1899.

"Q.  Whereabouts?   A.  Indian Territory.

"Q.  How do you know he died in 1899 in the
Indian Territory?   A.  From his daughter. . . .

"Q.  Your father died here at Kansas City?   A.
Yes, sir; on the old home.

"Q.  What do you mean by the old home place?
A.  On the farm where we were living.

"Q.  Where was that farm located?   A.  Down
here in the West Bottoms.

"Q.  Where the city now is?   No, it is in the river
now.

"Q.  The farm is in the river now?   A.  Yes,
sir."

## OPINION

BOND, J.  (After stating the facts as above).—
This case, having been submitted on an agreed state-

ment of facts (as to all questions on which right to re-
cover depends), the proper judgment to be rendered is
a mere legal conclusion and the burden is upon plain-
tiffs to show that the judgment in their favor is the
only one which could have been rendered under the
applicatory law. [Gage v. Gates, 62 Mo. 412; Mun-
ford v. Wilson, 15 Mo. 540; Rannells v. Isgrigg, 99
Mo. l. c. 28; Graham v. Ketchum, 192 Mo. l. c. 24; State
ex rel. v. Merriam, 159 Mo. l. c. 660; South Mo. Land
Co. v. Combs, 53 Mo. App. 298.]

The first question arising under the agreed state-
ment is the effect of the absence of an "official seal"
to the certificate given by the mayor
of Kansas City of the acknowledg-
ment "in proper form" before him
of Augustine Rivard and Louis Rivard of the execu-
tion by them of a deed conveying certain lands "de-
rived from Gabriel Philibert the father of Augustine
Rivard."

Acknowledgment:
Married
Woman.

At the time of this acknowledgment of the
grantors, the officer who took it, M. J. Payne, was
mayor of Kansas City and under its charter was em-
powered to take acknowledgment of deeds and to cer-
tify the same under the seal of the city. [Laws 1853,
p. 244; Laws 1851, p. 90, sec. 6, art. 3.] By giving
its mayor the same power as the mayor of St. Joseph,
the charter of Kansas City also made him *ex officio*
a justice of the peace. Hence, at the date of this ac-
knowledgment, he was entitled under the charter and
the existing statutes to take it in that capacity. [R. S.
1855, p. 358, secs. 17 and 18.]

At the date of the deed in question the common
law power of a married woman to convey her lands
by the judicial process of fine and recovery, had been
substituted by statute in this and other states giv-
ing a married woman the power to make such con-
veyances by a joint deed with her husband. The proc-
ess of conveying her lands by joint deed with her

husband had been generally adopted in this country by married women in colonial times and the statutes in this and other states were declaratory and definitive of an anterior and continuous custom which had acquired the force of a law. [R. S. 1855, chap. 32, secs. 35, 39; Lindell v. McNair, 4 Mo. 380.] The statutes of this State at an early day provided that a married woman might be made a party when joined with her husband to certain legal actions. [R. S. 1855, chap. 128, art. 2, sec. 7.] These positive provisions of the law have been enlarged until at the present date they have abolished the inequality of married women in the enjoyment and assertion of the rights of property and have banished the obscuration to which they were subjected by the influence of feudalism in the common law of England. The present statutes mark the slow but sure adaptation of the law to the progress of civilization and the edicts of enlightened public opinion. So far has this been accomplished that few relics remain of the disabilites imposed on them by the influence of military tenures. The law as it now exists is applied to the status of a married woman in a protective spirit and with the helpful purpose of putting her on a plane of equality, so far as is consistent with the nature of things, with all other citizens.

When the statute was enacted which was in existence when the deed under review was made, it was the purpose of the lawmakers, as disclosed in the terms of the act, to enable the married woman to sell her land by joining her husband in a conveyance, after acknowledging the execution of the deed in the manner prescribed by statute. The special acknowledgment then required has been now dispensed with. It was the purpose of the statute then, as at present, to make the joint deed of a married woman and her husband, when duly acknowledged by her and delivered to the grantee, a complete transfer of the title to her land between the *immediate* parties or such as have notice

thereof. [R. S. 1855, chap. 32, sec. 42.] The statute, then as now, required such acknowledgment to be made before a competent officer whose duty it was to certify the same as prescribed by the statute. But the statute did not make a mere certificate of the acknowledging officer operate as a conveyance of the land of the wife and husband. Their action in executing and acknowledging the instrument in the statutory mode was the efficient cause of the transfer of the title. The requirement of the certificate showing a previous compliance by the spouses with the statutory requisites of a valid deed to a married woman's land, was for the purpose of evidencing the making of the contract by them, and to afford a basis for the filing of the deed in the recorder's office, and to dispense with proof of its execution unless the recitals of the certificate were denied. [Sharpe v. McPike, 62 Mo. 300; Wilson v. Kimmel, 109 Mo. 260; Brim v. Fleming, 135 Mo. 597; Harrington v. Fortner, 58 Mo. 468.]

In the case at bar the deed was acknowledged both by the husband and wife in the manner provided by the statute and before a competent officer, and was signed and delivered by them to the grantees and the purchase money was received and the possession turned over to the grantees. The contract of sale was therefore completely executed by the parties making it, each of whom had complied with every statutory condition to validate the contract imposed on them. And it necessarily carried the title as between them, unless that was defeated by the failure of a third party to perform a ministerial duty. This person, the mayor of Kansas City, before whom each of the grantees had made a correct and formal acknowledgment of the respective execution of the deed, did certify that fact in proper language and attested it by his official signature followed by his private seal, stating that no official seal had been provided. Hence it is palpably plain that the only irregularity pertaining to this cer-

tificate, was the omission to call the seal impression following the official name a public seal instead of a private seal. This presents the naked question whether this miscalling of the seal impression which followed the truthful record of the valid making of a deed, can annul its effect as a conveyance between the immediate parties, although executed by them in full and strict compliance with the law.

We cannot assent to this view. It is at war with the settled law relating to certificates of acknowledgment of deeds and other instruments. These are nothing more than recitals by the person before whom the acknowledgment is made, that the grantors in the deed have or have not acknowledged it in the form prescribed by law. The only object of the certificate is to furnish prima-facie evidence of the facts constituting the acknowledgment; for it is not conclusive evidence and may be impeached or supported by testimony. [R. S. 1855, chap. 32, sec. 47.] It is not auxiliary to the *transfer* of the title, for it is the act of a person who is a *stranger* to the title. It is simply a statutory method of affording presumptive evidence of antecedent facts. It is a mere evidentiary narration which when properly made is taken to be prima-facie true, but if imperfectly made it may be afterwards amended by the certifiers so as to speak the truth. This for the reason that it is the prior facts and not the subsequent recital of them, which constitutes the contract or deed. The instrument between the immediate parties is just as efficacious with as without it. The only difference being that if it is placed upon the deed in accordance with the actual facts of acknowledgment made and done as required by statute, and the instrument is recorded, then it becomes good, not only between the immediate parties, but against subsequent purchasers. This is the sole utility of the certificate when the facts of due acknowledgment actually exist prior to its endorsements thereof on the

deed. For it is these facts, and not the mere historical record of their performance, which would cause the title of the grantors to pass to the grantees.

So in the case at bar, after the husband and wife signed and acknowledged the deed under review in exact compliance with the statute, both as to signatures and as to the special acknowledgments required of the wife, before a proper officer and delivered it in exchange for the price of the land (all of which the agreed statement shows was done), neither the husband nor wife could maintain any action for the divestiture of that title or to recover the price a second time (as is now attempted to be done by their heirs), unless they could adduce evidence tending to prove that there was some *want* of compliance with the statute on the part of the wife in the matter of the acknowledgment on a separate examination of the execution by her of the deed in question. The possibility of such evidence is excluded by the clear, positive and unequivocal terms of the last paragraph of subdivision six of the agreed statement of facts where it is stipulated said "deed was acknowledged in proper form before M. J. Payne, mayor of the City of Kansas, now Kansas City, Missouri." If that statement is true, as it must be taken, then Mrs. Augustine Rivard not only signed a deed conveying her land, but at the time of so doing, made an acknowledgment in complete compliance with the statute then in existence before a proper officer who has been shown to have been authorized under the charter of Kansas City to take her acknowledgment and who did take it and properly record the fact but did not attest his record with a seal provided by the city.

If any rights of innocent purchasers were involved, a wholly different question would be presented, but in this case the plaintiffs are the *heirs* of Augustine Rivard. They stand precisely in her shoes and have no rights of action which she could not have asserted

herself if she had survived her husband. That she could not have brought an action either of ejectment or for a second recovery of the value of the land is perfectly plain under the provisions of the statute which the agreed statement shows she complied with when she sold it the first time. If any other theory were true the absurd result would follow that after having done all that a married woman was required to do in order to convey title to her land and received the purchase money, she could thereafter bring action for the land or its value, not because of the invalidity of her contract or her acknowledgment thereof before a proper officer, but for the fact that such officer had failed to affix to his official signature to the record of her acts in conformity with the law, a public instead of a private seal. In other words, such a theory would give the certifying official the power by such neglect to divest title to property which had been validly conveyed by its owners according to the terms of the statutes. That is not the law, and was not the design of the statute enabling married women to dispose of their property which existed when this deed was made.

Nor do the cases cited for the plaintiffs sustain their contention. The case of Geary v. Kansas City, 61 Mo. 378, is a ruling upon a certificate of acknowledgment made by the same officer as mayor of Kansas City to which he appended his official name under a seal which he states was his private seal, ''there being no official seal of office provided.'' It does not appear from the opinion who was grantor in the deed, nor is there any statement in the opinion which indicates for what purpose the deed was used on the trial below, except the possible inference that it was offered in evidence as proof of the execution of the deed, and objected to on the ground of the absence of the seal to the certificate of M. J. Payne, mayor of Kansas

City. In dealing with the point presented the court held that he (the mayor) was authorized under the charter to take the acknowledgment of the deed but was required to affix to his certificate the seal of the city and not his own seal. The deed was seemingly received in evidence in the lower court upon prima-facie proof of its execution afforded by the certificate. This court held that was error and reversed and remanded the cause, evidently for the purpose of permitting the party relying on the deed to make other proof of its execution than the certificate of the mayor. The point decided in that case has not the remotest application to the conclusion reached by us under the express terms of the agreed statement of facts. All that Judge NAPTON held was that a defectively *attested* certificate would not supply the necessity of providing a due execution of the deed. In the case at bar the due execution of the deed including its acknowledgment, is admitted in so many words in the agreed statement of facts. Judge NAPTON did not hold that the deed before him did not carry the title of its maker to the immediate grantee, for the mere misprision of the attesting officer. On the contrary the inference is clear, from the disposition of that case, that it was sent back for a new trial to supply the proof of execution which the omission of the public seal prevented the certificate of the officer from affording.

Respondents cite Huff v. Price, 50 Mo. 228, and Shaffer v. Kugler, 107 Mo. l. c. 63; neither of these cases are the least in point. The former was a contract for *future* conveyance made by the wife *alone*. The possession was turned over to the grantee who made some payment and put up some improvements. The husband and wife brought ejectment. This court held the executory agreement of the wife, she having no separate estate, was unenforceable under the statutes then existing. But notwithstanding that fact,

it was held they could not regain possession of the land except by payment to the defendant of the amount which he had paid on the same and the value of the improvements. There was no joint conveyance nor any question as to the effect of the certificate of acknowledgment in that case.

The second case was a *post*-nuptial agreement of the wife for the conveyance of her general estate to her husband. The court held this was not enforceable against her or her heirs, there being no statute at that time which permitted such contracts between husband and wife. This ruling is clearly aside from the matter at hand.

In the case of Robinson v. Dryden, 118 Mo. 534, the plaintiff brought ejectment and claimed title through a married woman's deed which was offered in evidence and was excluded because the certificate did not show she was privily examined as then required. No other ruling could have been made. The very purpose of a certificate is to afford prima-facie evidence of its statements. The deed offered showed that the married woman had not acknowledged the deed on an examination separate and apart from her husband. Necessarily, therefore, the party could not prove a statutory deed by a certificate showing omission by one of the parties of a necessary requirement. That ruling does not apply to the case at bar. Here the express agreement is "*that the deed was acknowledged in proper form.*" In the case cited the only evidence (the certificate) showed the deed was *not* acknowledged in proper form. If the language of the certificate in the case at bar had disclosed that Augustine Rivard did *not* acknowledge the deed as married women were required to do, or if the proof had been to that effect, we should not hold that her deed was valid when made. But the language of the certificate in her deed is not quoted and both parties have agreed that she *did acknowledge the deed in proper form.* This conclusively,

settles that fact and shows that the case cited has no conceivable bearing on the one under review.

Again, Wannell v. Kem, 57 Mo. 478, was an action for a note secured by a mortgage of the wife's land. The wife denied the truth of the certificate of her acknowledgment. It was held that this made an issuable fact and that the finding of the jury of the falsity of the certificate under proper instructions was not open to review. The principle of this decision sustains our conclusion that it is the *fact* of a statutory acknowledgment and not the *recital* of that fact by the notary or other officer, which validates a joint conveyance by the husband and wife. In the case cited the notary was permitted *to amend* his certificate which as first written was defective. The wife denied its truthfulness *after* its amendment, and only after a finding in her favor was the mortgage avoided. This clearly recognizes the principle that it is only a *defective acknowledgment* which will render their statutory deed invalid.

Plaintiffs cite Hord v. Taubman, 79 Mo. 101, where it is said that the fee estate of a married woman could only be divested "by a deed executed cojointly with her husband, and acknowledged in the way pointed out by law." This is just what we have ruled.

Hoskinson v. Adkins, 77 Mo. l. c. 540, cited by plaintiffs is in perfect accord with our ruling. It is accurately stated in that case, to-wit: "A married woman's title does not pass by the execution and delivery of the deed, but the acknowledgment is as essential as her signature and the delivery of the deed to give it effect." This is the precise distinction that sustains our ruling, that it is the execution and acknowledgment of a married woman which carries her general estate when her husband was a co-grantee, and that her estate passed under such an instrument when delivered, regardless of the notation of her acts on the deed by the third party (notary or officer) in the per-

formance of his ministerial duty of providing prima-facie evidence of the acknowledgment of the grantees.

Plaintiffs also cite Clay v. Mayer, 183 Mo. 1. c. 157. That case notes the distinction between the suability of a married woman on her contract before and after the enabling act of 1889. [R. S. 1899, sec. 6864.] The decisions prior to that act we have shown do not militate against our conclusions. The decisions subsequent of course have no bearing on the question whatever.

We hold that the deed of Augustine Rivard and her husband executed and properly acknowledged by each, was within her statutory power to convey her inherited land and vested the grantees with title good against her or her heirs, although the certificate of the officer who took the acknowledgment was attested only by his private seal.

II. The next question presented is, what was the effect of the decree of the circuit court in reforming the mistake in the description of the land conveyed in the deed? This action was brought by the grantees in the deed within a few months after the conveyance to them. Augustine Rivard and her husband were brought in by publication and having made default the court heard evidence and rendered a judgment correcting the mistakes in the deed and vesting the title thereunder as fully as if the deed had contained a true description when it was made. The effect of this decree (if the court had jurisdiction of the subject-matter and the parties) was to insert in the deed what the parties intended to put in it. But plaintiffs contend that the court was without any jurisdiction in the matter and therefore its decree was void and open to collateral attack in this case.

*Married Woman's Deed: Description of Land Corrected by Court of Equity.*

We cannot concur in that suggestion. The power to reform deeds and instruments *otherwise valid,* for mutual mistake in descriptions of the property, is a subject of inherent jurisdiction and peculiar remedy in equity. It extends to all cases where the parties are competent to contract. It does not embrace any case where the parties are incapable of contracting. [2 Pomeroy's Eq. Rem., sec. 675 et seq.] Nor does it afford any remedy for a defective exercise of a statutory power, for that would in effect defeat the very policy of the positive law. [1 Story's Eq. Jur. (13 Ed.), sec. 177.]

In the application of this principle to contracts of married women in states where their deeds must be executed according to statutory requirements, equity will not decree a reformation on account of the failure of the married woman to *acknowledge* the deed, or to do any other act prescribed by the statute, in order to qualify her to make the contract. For otherwise it would practically repeal the governing statute and require her to make a contract which she had not made. But when none of these defects exist, and the contract has been executed by the married woman in a lawful manner, then the rule, according to Mr. Pomeroy, is thus expressed: "A mere mistaken description in her executed conveyance may, however, by the preponderance of authority, be corrected against her." [6 Pom. Eq. Jur., sec. 681, p. 1147; Hamar v. Medsker, 60 Ind. 1. c. 416; Herring v. Fitts, 43 Fla. 54; Stevens v. Holman, 112 Cal. 345; Christensen v. Hollingsworth, 6 Idaho, 1. c. 91; Parish v. Camplin, 139 Ind. 1. c. 10.] This is necessarily a sound principle of law, for it is nothing more than the stating that the *valid contract* of a married woman may be reformed in the same manner as the *valid contract* of any other person.

Plaintiffs cite Shroyer v. Nickell, 55 Mo. 1. c. 267, and other cases following it, to show this court announced a *legal doctrine* not in harmony with the above

rule. If this be conceded it only proves that this court did not give relief in certain cases in equity when it was granted by others. It does not sustain the contention that courts of equity were without jurisdiction to hear and decide the matter. This very divergence of view implies that courts of equity here and elsewhere, did then *exercise* the power to pass upon and to decide questions of correctability of the valid contracts of married women, although in so doing they acted according to different equitable standards. None of these cases denied the power of circuit courts sitting in chancery to entertain jurisdiction of the subject-matter of such causes. All that is said in any of the former decisions of this court is, that it was error on the part of the trial courts to construe the statutes then existing to justify the correction in the matter of description, of a married woman's deed, although made and acknowledged in full conformity with all legal requirements on her part. It is wholly unnecessary at this late day to reconsider the rulings in Shroyer v. Nickell, supra, because they do not touch the vital question of jurisdiction of the subject-matter. The right of a married woman to contract, free from disability on account of that state, has been settled so long by statute and decisions, that the view expressed in Shroyer v. Nickell, relative to the propriety of correcting her valid contract for mutual mistake, has become the obsolete reflection of stage of society far in the rear of that in which we now live.

The crucial question in the case at bar, is not whether the decree correcting the married woman's deed followed the ruling in Shroyer v. Nickell, supra, but whether the trial court in refusing to apply that ruling acted without any jurisdiction of the subject-matter and the parties or erroneously exercised a lawful jurisdiction? The failure to distinguish between "the erroneous exercise of jurisdiction" and "the want of jurisdiction" is a fruitful source of confusion and

errancy of decision. In the first case, the errors of the trial court can only be corrected by appeal or writ of error. In the last case its judgments are void and may be assailed by indirect as well as direct attack. A court is possessed of jurisdiction when it is permitted by the policy of the law to hear and determine cases of the same nature as the one with respect to which the complaint is made, and where it has jurisdiction of the persons of the parties to the suit. The judgment of the trial court lacking either of those essentials is open to any form of attack. It follows that the judgment of a court of general jurisdiction with the parties before it and with power to grant or refuse relief in the case presented, though contrary to law as expressed in the decisions of the Supreme Court or the terms of a statute, is at most only an erroneous exercise of jurisdiction and as such is impregnable to an assault in a collateral proceeding.

In the matter in hand, the trial court had jurisdiction in the statutory mode of the grantees in the deed with full power to determine the cause of action stated in the petition filed. That its decree correcting the description of the land was opposed to the ruling of this court in Shroyer v. Nickell, supra, and the case following it did not oust it from its rightful jurisdiction of the case presented, and its judgment, however erroneous, under the decisions of this court at that time, not having been appealed from or brought up for review by writ of error, is conclusive on the parties thereto and all persons in privity with them.

Plaintiffs in this case have no other or higher claim to relief than was had by their mother, and as her nonaction against the decree was a complete bar to her, it is equally so against them. We hold that the decree under the agreed statement of facts in this case, was not void nor open to attack below, and that it shut off any claim on the part of plaintiff for the land to

which defendant acquired title through deed of their mother as corrected by said decree.

III. Another ground for reversing this judgment is that of estoppel. The basis of this defense appears in that agreed statement of facts which plaintiffs offered as the ground of their right to recover. It is therefore available against them without being especially pleaded, as would be the rule if it was not a part of plaintiffs' case.

**Estoppel.**

The very decisions relied on by plaintiffs are to the effect that, whether the married woman's deed was void for noncompliance with the authorizing statutes then in vogue, both she and her husband are debarred from recovering possession of the land delivered under such deed in an action of ejectment, without accounting to the grantees for the payment of purchase money and improvements after deducting rents. This is distinctly suggested in the last paragraph of McReynolds v. Grubb, 150 Mo. l. c. 365. To the same effect is Bagby v. Emberson, 79 Mo. l. c. 140, and Shroyer v. Nickell, 55 Mo. l. c. 270.

The present action is a mere substitute for ejectment because of the appropriation of the land for railway purposes by the acquiescence of Augustine Rivard after she and her husband had obtained the purchase money and delivered possession under their joint deed. [Scarritt v. The K. C. & So. Ry. Co., 127 Mo. 298; Alexander v. K. C., Ft. S. & M. Ry. Co., 138 Mo. 464.] If they could not retake the land in ejectment without such accounting, clearly neither they nor their heirs could take a second payment therefor by an alternative suit for its value, without making a similar accounting.

Upon the facts stipulated in this record there is no theory of law or equity which would warrant the judgment recovered by plaintiffs and it is reversed. *Graves* and *Walker, JJ.,* concur, *Graves, J.,* in opinion filed in which *Woodson* and *Walker, JJ.,* concur. *Woodson*

concurs in paragraphs two and three and in result. *Brown* and *Faris, JJ.,* and *Lamm, C. J.,* concur in result, *Lamm, C. J.,* in opinion filed, in which *Woodson, Graves* and *Walker, JJ.,* concur.

### CONCURRING OPINION.

LAMM, C. J.—I agree to the result reached by my brother BOND. This is one of those. cases where the court is put in a strait betwixt two because the broad justice of the matter runs in a strong current with the defendant, but where (on some phases) there is judicially-made technical law in favor of plaintiffs in this jurisdiction, as is abundantly shown by the strong brief of respondents' counsel. It is true that under our married women's enabling acts, passed in the seventies and eighties of the last century, their status with respect to their property and property rights has been so readjusted and altered that they are now *sui juris,* may contract and be contracted with, sue and be sued, but that readjustment is too new to permit us to lightly or irreverently break the tender vessels in the workshop of the old learning on married women's law. That learning may still be of useful application to interests vested prior to those late enabling acts and to transactions arising under the old dispensation. Those vested interests are yet live interests to be reckoned with and those acts are yet to be drawn within the possible lines of live litigation to come here to be ruled. Hence the need of abundant caution in unsettling the law. I do not dissent from my brother's learned views on the validity of Mrs. Rivard's 1857 deed, or on the validity of the unappealed from judgment correcting that deed in December, 1857. I mark myself as saying nothing thereon at this time, because I deem it unnecessary to do so, since this case breaks at another point.

My reasons for concurring in the result reached by my brother are these: It is the settled doctrine of

Rivard v. Railroad.

this court that a party whose land has been appropriated by a railway company for quasi-public purposes, as was this land, is, by reason of estoppel, not entitled to recover the possession of the land by ejectment or by any possessory action. His remedy is for the value of the land wrongfully appropriated. The solidest grounds exist for that proposition which those curious in that behalf may verify by consulting the cases (Second St. Imp. Co. v. Railroad, 255 Mo. 519, and cases cited) and which grounds these plaintiffs recognized in bringing their suit in its present form for value and not for possession; and the fact that courts were able to work out that sensible and useful theory but demonstrates that the administration of justice is a practical affair, an invention for the adjustment of the rights of individuals and is not a technical an l accurate science, but is an applied science, adjusting itself to work out justice in all the protean shapes the dealings of mankind assume.

With that proposition established, to-wit, that there never could be a possessory action accrue to any one for the recovery of this particular land, this by reason of the fact that the railway company appropriated it openly, entirely, physically and obviously to the whole world more than a generation and a half ago, I think the life estate outstanding in the husband of Mrs. Rivard and which did not fall in until 1899, has nothing to do with the case. If the heirs of Mrs. Rivard, the plaintiffs here, could sue for possession then the outstanding life estate would have been an insurmountable barrier in the road at all times before that life estate fell in. Their cause of action for possession in such event would not accrue to them until their father died; for he, as tenant by the curtesy, being *sui juris*, had disposed of the life estate, and that conveyance of his entitled his grantees to possession and the subvendees of his grantees likewise during the existence of the life estate. But as there could be no

recovery of possession in any event, it is illogical and idle to bother with that phase of the Statute of Limitations relating to the mere right to possession or to consider when such possessory right accrued. The right to possession is out of the case and, when out (even as the fall of the apple tree brings down the apple itself), took with it out of the case all the incidents of that right and all those questions regarding the Statute of Limitations in possessory actions. The maxims are: Where the cause ceases, the effect also ceases, the primitive ceasing the derivative also ceases. The reason of the law ceasing, the law itself ceases.

Going one step further: If we have nothing to do with the right to possession and have no interest in when a cause of action for possession accrued, *which never could accrue,* then we must look alone to the *real* cause of action, which is, I think, one arising because of (and on) the unlawful and absolute appropriation of the land. That cause of action accrued, if at all, at the time the land was subjected to said permanent and wrongful appropriation. It accrued, if at all, to the mother of plaintiffs. The most favorable view to plaintiffs is that, as she died during disability and as the right in suit pertains to (or is in the nature of) land, then, it passed and accrued to her children on her death in 1877; and, hence, by the flux of time, it has long since been lost to them by delay in suing. We say "most favorable view," because if the thing be considered a mere right of damages, a chose in action, then the right of recovery was lost sooner and on obvious grounds.

It might be argued that until the life estate fell in it would be impossible to estimate their damages, or, more strictly that part of the value of the land belonging to them as heirs. But this is not so. The father's share in this value, represented by his life estate, had passed to defendants. It was susceptible

of definite ascertainment at any time by the use of life tables. When so ascertained it could be deducted from the total land value in any proceeding before his death, and I am unable to see (1) why these children had to wait until their father died before suing in this particular kind of case, where possession is not and never could be involved, or (2) what his death has to do with the case. Observe, it is only by virtue of the fact that the life tenant died in 1899, that plaintiffs contend the Statute of Limitations was tolled and that they have here any standing in court. If the question was *possession,* they might be right in their views, or might not, but as it is *not* possession, the case can not ride off on rules of law applicable to possessory actions.

There being no fraud, no concealment, no covin, no fiduciary relation and plaintiffs' ancestors having received, kept and used the purchase price of this land a half century ago, and they having stood by with folded arms until a great city was built on it, the healing influence of time must be allowed full play and the result reached does exceedingly excellent justice. [Hubbard v. Slavens, 218 Mo. l. c. 615 et seq.] Wherefore, for reasons stated, I concur in the result.

*Woodson, Graves* and *Walker, JJ.,* join me in this opinion.

## CONCURRING OPINION.

GRAVES, J.—In this case I concur fully in the opinion of BOND, J., upon all questions discussed by him therein. I also concur in the views of LAMM, C. J., wherein he holds that neither the parties plaintiff, nor their ancestor, ever had any possessory action, but only had an action for the reasonable value of the land appropriated for a public use, which action is long since barred by the Statute of Limitation. In addition I have a view of my own, not suggested in either

opinion. The agreed statement of facts shows that Mr. and Mrs. Rivard were sued in equity in the circuit court of Jackson county. The petition in that case, as outlined in the agreed statement of facts, not only asked for a correction of the deed, but likewise asked that the title be divested out of defendants and vested in plaintiffs.

Going further to the agreed statement of facts, the judgment in that case not only decreed a correction of the deed, but went further and decreed title in the plaintiffs. Cutting out the part relating to the correction of the deed, such judgment reads: "It is therefore ordered, adjudged and decreed by the court here that . . . the title to said real estate, to-wit (here follows description), pass to and vest in plaintiffs as against defendants as well as against all others claiming under them as fully," etc. I have no doubt that the decree undertakes to and does go further than the mere correction of the deed. It undertakes to and does vest title to the land in dispute in the plaintiffs in that action. To my mind this judgment is not void upon its face, and so long as it stands, it is an insuperable barrier to recovery by the plaintiffs in this case, and this, too, without reference to any discussion about this deed and its acknowledgment. Our brother BOND limits his discussion as to the judgment as one correcting the deed solely. I think the judgment goes further, and not only corrects the deed, but divests title. The circuit court, as a court of equity, may have erred in judgment, but with that we have nothing to do. Married women, infants and lunatics have always been the special wards of equity, and if a court of equity can decree title from an infant or a lunatic, there is no good sense in saying that it can not decree title out of its other ward, i. e. a married woman. Upon any of the several theories, this case should be reversed.

*Woodson* and *Walker, JJ.,* concur in these views.